IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:07-CV-166-H
ALL CASES

| | |
|---|---|
| LEE LEWIS and JANICE HOSLER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| SMITHFIELD PACKING COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on the motion (D.E. 363) of defendant Smithfield Packing Company, Inc. ("defendant") to decertify the conditionally certified class. The motion is supported by a memorandum (D.E. 363-1) and exhibits (D.E. 363-2 through 363-18). Plaintiffs have filed a memorandum in opposition to defendant's motion (D.E. 375) that is supported by exhibits (D.E. 375-1 through 375-10). Defendant filed a reply (D.E. 388) supported by additional legal authority (D.E. 388-1). Plaintiffs later filed a notice of subsequently decided legal authority (D.E. 396). The motion was referred to the undersigned for a memorandum and recommendation. For the reasons that follow, it will be recommended that the motion be denied.

## BACKGROUND

**I.     OVERVIEW OF CASE**

In this action, plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., arising from their employment at defendant's Tar Heel, North Carolina meat processing facility. In their third amended complaint, plaintiffs allege that defendant failed to compensate them for time spent engaged in donning and doffing protective equipment (including, for purposes of this motion, protective clothing) and related activities (collectively "donning and

doffing activites"). (Third Am. Compl. (D.E. 174) ¶ 12). The specific activities for which they allege they were not compensated include: (1) obtaining their required protective equipment from designated areas in the plant; (2) walking to and from the work station, processing line, or both; (3) donning and doffing protective items and hygiene-related equipment before their shift, during their shift, and after their scheduled shift ends; (4) waiting for a shift to begin or for relief to arrive; (5) washing and cleaning tools and other equipment; and (6) other pre- and post-shift activities required by defendant. (*Id.*). Plaintiffs seek unpaid back wages, unpaid benefits, liquidated damages, attorneys' fees, and other relief. (*Id.* ¶ 20). Defendant generally denies plaintiffs' material allegations. (*See* Def.'s Ans. (D.E. 189)).

Plaintiffs assert their FLSA claims as a collective action, pursuant to the provisions of that statute, 29 U.S.C. § 216(b). (Third Am. Compl. ¶ 2). By its 8 August 2008 Order (D.E. 233 at 2), the court allowed the parties' joint motion for conditional certification. The approved class was conditionally defined to include:

> All current and former hog process division line production employees who have been employed at any time by Smithfield Packing Company Inc. at the Tar Heel, North Carolina processing facility from 9 October 2004 through the deadline for filing consents to sue and were paid using a "gang time" or "schedule time" compensation system.

The parties later agreed to dismiss certain job categories from the scope of the lawsuit (Stipulations (D.E 334))[1], and the dismissal was approved by the court (D.E. 383, 398). It is this conditionally certified class that defendant seeks by its motion to have the court decertify. Discovery in this case has closed.

---

[1] The specific jobs excluded are set out in D.E. 334-1.

## II. OVERVIEW OF DONNING AND DOFFING ACTIVITIES AT TAR HEEL PLANT AND ASSOCIATED COMPENSATION

Plaintiffs allege and the evidence shows that most employees at the Tar Heel plant were paid on a "gang time" system (also known as a "line time" or "schedule time" system)—that is, the vast majority of their compensation is based on the time they spend working on the production line. (*See, e.g.*, Third Am. Compl. ¶ 4; Jeffrey Gough Dep. (D.E. 375-4) 88:1-23; Marcie Smith Dep. (D.E. 363-18) 22:1-12). In addition to this compensation, before November 2006, all employees at the Tar Heel plant were paid for three minutes a day for donning and doffing activities. (Smith Dep. 28:11-18).

After November 2006, defendant began paying the employees on the production line who used knives and wore the requisite protective equipment for knife use for an additional seven minutes a day for a total of ten minutes a day. (*Id.* 11:2-12, 28:11-14). Defendant based its decision to increase pay by seven additional minutes on its evaluation of the time it took the knife-wielding employees to perform donning and doffing activities. (*Id.* 34:1-10). Defendant made retroactive, lump-sum payments to knife-wielding employees for the additional seven minutes for each day that they worked between November 2003 and November 2006. (*Id.*). In the spring of 2007, defendant realized that, in some instances, the seven additional minutes per day resulted in overtime and made another round of back payments in April 2007 to account for overtime. (*Id.* 37:10-38:14). In total, defendant made back payments of approximately $912,000.00, which included payments to all current knife-wielding employees as well as to any former employees who contacted defendant and requested payment. (*Id.* 38:18-20, 42:3-7).

While defendant requires certain plaintiffs to wear particular items of protective equipment on the production floor, other items, such as cotton gloves, sheets of plastic, and safety glasses are

3

provided solely for employee comfort. (Les Nemec Dep. (D.E. 363-11) 19:24-25, 136:8-137:8). The protective equipment required to be worn can vary by employee position, including the employee's assigned department or floor (*i.e.*, kill, cut, conversion, or case ready). (*Id.* 19:24-25). For example, non-knife-wielding employees are required to wear lightweight sanitary clothing including a bump cap, head net, disposable gloves, and a disposable smock, (*id.* 74:15-17), whereas some knife-wielding employees wear a combination of a cut-resistant glove, arm guard, belly guard, scabbard, and steel, (*id.* 15:1-10, 19:22-23). Other knife-wielding employees also wear mesh gloves. (*Id.* 15:11-21, 114:2-3).

Likewise, the time and place that the plaintiffs don and doff items can vary from employee to employee. Some employees don protective gear (other than those obtained on the production floor) at home, while others do so just prior to their shift beginning. (Barbara Jacobs Dep. (D.E. 363-16) 29:8-30:6). Similarly, some employees discard their disposable items as they exit their department, while others wash their disposable items before discarding them. (Betty Chavis Council Dep. (D.E. 363-15) 45:9-19; Ella Mae Humphrey Dep. (D.E. 363-9) 34:14-18). Some knife-wielding employees are required to wash their mesh gloves, belly guard, scabbard, steel, and arm guard, and turn in their mesh gloves before exiting the wash area. (Nemec Dep. 39:22-23, 81:01-25, 98:14-17, 99:15-100:4). On the kill and cut floors, however, designated employees rinse mesh gloves for knife-wielding employees. (Rick Arthur Dep. (D.E. 363-17) 74:21-22).

## DISCUSSION

### I. LEGAL STANDARD

The FLSA allows for the commencement of an action for unpaid minimum wages and overtime pay against an employer by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* The two requirements for maintenance of a representative action under the FLSA are: "(1) the plaintiffs in the proposed class must be 'similarly situated' and (2) they must opt in by filing their consent to sue with the court." *Jimenez-Orozco v. Baker Roofing Co.*, No. 5:05-CV-34-FL, 2007 WL 4568972, at *6 (E.D.N.C. 21 Dec. 2007); *accord De Luna-Guerrero v. N.C. Growers Ass'n*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004). To be similarly situated to plaintiff for purposes of § 216(b), persons "must raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." *De Luna-Guerrero*, 338 F. Supp. 2d at 654 (internal citations omitted).

Certification of a collective action is a two-step process. *Baker Roofing*, 2007 WL 4568972, at *6; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). At the notice stage, which generally occurs in the early stages of a case, the court will conditionally certify the class based on the limited record before it under a more lenient standard and approves notice to putative class members of their right to opt in, as happened here. *Baker Roofing*, 2007 WL 4568972, at *6. The final determination on certification is made later, typically after discovery on a defendant's

motion for decertification, when the court has available to it substantially more information to make the "substantially similar" determination. *Id.* If at this final determination, the court finds that the plaintiffs are similarly situated, the matter proceeds on to trial. *Nolan v. Reliant Equity Investors, LLC*, No. 3:08-CV-62, 2009 WL 2461008, at *7 (N.D. W. Va. 10 Aug. 2009). However, if the court deems the plaintiffs not similarly situated, the action is decertified and the opt-in plaintiffs are dismissed without prejudice and the class representative may proceed to trial with his or her individual claims. *Id.* (citations omitted); *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008) (same). It is at this final stage that the present motion arises.

In order to determine if the proposed class is similarly situated at this stage of the proceeding, courts must consider: (1) the factual and employment settings of the individual plaintiffs; (2) whether defendant has presented individualized defenses; and (3) fairness and procedural issues presented. *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1081 (D. Kan. 1998)). "Variations in damages . . . do not warrant decertification." *Madden v. Corinthian Colleges, Inc.*, No. 08-6623, 2009 WL 4757269 at *3 (N.D. Ill. 8 Dec. 2009).

## II. ANALYSIS OF WHETHER PLAINTIFFS ARE SIMILARLY SITUATED

Defendant contends that plaintiffs fail to satisfy each of the three criteria for establishing that they are similarly situated. The court will examine each criterion in turn below.

### A. Factual and Employment Settings of Plaintiffs

The first factor to be considered requires both an analysis of whether plaintiffs have developed evidence of a company-wide policy that may violate the FLSA and a review of plaintiffs' job duties, geographic location, supervision, and salary. *Rawls*, 244 F.R.D. at 300 (citing *Thiessen*,

996 F. Supp. at 1081-82; *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006) ("A group of potential plaintiffs are 'similarly situated' when they together were victims of a common policy or scheme or plan that violated the law.")).

Defendant argues that significant differences exist between the factual and employment settings of the individual plaintiffs in this case. Defendant focuses on the proposed "first-touch rule" plaintiffs advocate. This rule can be defined in general terms as the principle that compensable donning and doffing time begins when an employee first touches required protective equipment on defendant's premises and ends when the employee last touches it. Defendant contends that this rule requires an individualized assessment of when each plaintiff first and last touches the equipment because it can vary widely among employees, depending on their personal preferences, which equipment is involved, and how their supervisors record their time.

Plaintiffs respond by highlighting the numerous similarities between each member of the conditionally certified class. These similarities include the fact that each plaintiff is an hourly employee at the same facility, works on a production line, is compensated according to a gang time system, is required to wear certain protective equipment, and is subject to a uniform policy or practice of being paid for either three or ten minutes' worth of certain daily donning and doffing activities performed after entering the production area. Plaintiffs do not dispute the presence of differences in the type of equipment required or in the location or manner of donning or doffing such equipment. Rather, they contend that the challenged company-wide uniform pay practice affects the entire class, making collective treatment appropriate notwithstanding any differences.

The court agrees with these points advanced by plaintiffs. As to the first-touch rule, differences in when employees first and last touch protective equipment relate primarily to the issue of damages. As indicated, differences in damages are not a basis for decertification.

Defendant does not limit itself to donning and doffing activities—the focus of this case—but dwells on differences in the details of the gang time system at different stages of production. Defendant has not shown, however, that these differences in the computation of gang time undermine the similarities that otherwise prevail with respect to donning and doffing activities.

Defendant relies on the decertification decision in *Gatewood v. Koch Foods of Mississippi, LLC*, Civ. Act. No. 3:07CV82-KS-MTP (S.D. Miss. 20 Oct. 2009). The reliance is misplaced because the differences among the members of the putative class there were significantly greater than those presented in this case. For example, that case involved not one plant, but four with varying layouts and practices and numerous departments. *Id.* 32-33. In addition and without limitation, some members of the class sought recovery for unpaid gang time and plaintiffs agreed they were not subject to a single pay practice. *Id.* 32, 33.

If the circumstances of each plaintiff were as vastly different and individualized as defendant argues, it would seemingly have been impossible for it to use a single pay scale for donning and doffing activities with a discrete number of categories that applied to all plaintiffs and purportedly accommodated the myriad of variables it alleges. The fact that defendant did, in fact, use such a pay scale, having only two categories, either a three-minute or ten-minute pay allocation, substantiates that plaintiffs are similarly situated.

Thus, the court finds as to the first factor that the members of the putative class are similarly situated for purposes of certification. *See, e.g., Russell v. Illinois Bell Telephone Co., Inc.*, \_\_ F.
8

Supp. 2d __, No. 08 C 1871, 2010 WL 2595234, at *5-8 (N.D. Ill. 28 Jun. 2010) (finding factual and employment settings similar despite individualized questions and circumstances where common questions predominate and differences could be resolved through subclass groupings); *Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp. 2d 870, 903-04 (N.D. Iowa 2008) (finding plaintiffs similarly situated where they all wore personal protective equipment and were paid by a gang time compensation system notwithstanding numerous factual differences among the plaintiffs). The first factor therefore weighs in favor of certification.

### B. Individualized Defenses

"The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Rawls,* 244 F.R.D. at 300 (citing *Thiessen,* 996 F. Supp. at 1085).

On this requirement, defendant again focuses on the first-touch rule advocated by plaintiffs. Defendant contends that, to the extent this rule is applied, differences among individual plaintiffs in the type of protective equipment worn, the interspersing of non-compensable donning and doffing activities with compensable ones, the time taken for donning and doffing activities, and other circumstances would give rise to individual defenses against particular plaintiffs. Defendant also states that it plans to rely on its prior retroactive payments to certain plaintiffs as a defense to the claims by those plaintiffs.

But these differences bear on the issue of damages, which, again, is not a basis for decertification. The broad similarities among plaintiffs provide defendant broad-based defenses to their claims, not requiring proof of individualized facts at trial.

9

Indeed, defendant has filed multiple motions for summary judgment not based on individualized defenses. (*See* Def. Mot. for S.J. re Knife Workers (D.E. 356); Def. Mot. for S.J. re Non-Unique Items (D.E. 358); Def. Mot. for S.J. re Claims after 1 July 2009 (D.E. 345)). Rather, the defenses asserted in those motions relate to large groups of plaintiffs or plaintiffs' claims and again substantiate the class-wide nature of the defenses available to defendant. For these reasons, this second, defense factor also weighs in favor of certification.

### C. Fairness and Procedural Considerations

Under the last factor, the assessment of fairness and procedural considerations, the court considers the primary objectives of a collective action: "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Rawls*, 244 F.R.D. at 302 (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000)). The court also must assess whether it can efficiently manage the class in a manner that does not prejudice the parties. *Id.*

Here, defendant contends that if this case is not decertified, it will need to prepare for more than 3,000 mini-trials that would deprive it of defending the claims in a meaningful manner. Plaintiffs argue that certification would significantly reduce the costs of this litigation to members of the putative class and that further proceedings are readily manageable.

The court agrees with plaintiffs. Absent certification, the relatively modest amount of time taken for donning and doffing activities and associated compensation could well mean that members of the putative class would be financially unable to pursue their claims. *Russell*, 2010 WL 2595234, at *16 ("Because of the modest amounts likely involved, many of the plaintiffs would be unable to

10

Case 7:07-cv-00166-H   Document 418   Filed 08/23/10   Page 10 of 12

afford the costs of pursuing their claims individually."). At the same time, allowing this case to proceed as a collective action would enable the court to address common issues of law and fact in a single lawsuit, without the inefficiencies associated with a multiplicity of suits brought by individual plaintiffs, to the extent they were able to bring them.

The court also believes that it has the tools available to it to manage this case as a collective actions efficiently and consistent with the parties' rights. As plaintiffs point out, the court can, if warranted, adopt subclasses for purposes of determining damages, in the event liability is established, and can permit plaintiffs to rely on representative testimony at trial, obviating the need for all class members to testify. *See, e.g., Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985) ("Courts have frequently granted back wages under the FLSA to non-testifying employees based upon the representative testimony of a small percentage of the employees . . . [and] [t]he requirement is only that the testimony be fairly representational."), *abrogated on other grounds by Pforr v. Food Lion, Inc.*, 851 F.2d 106, 110 (4th Cir. 1988); *Russell*, 2010 WL 2595234, at *16 (use of subclasses). Additional measures available to the court include use of a special master on damages. *Russell*, 2010 WL 2595234, at *16.

To be sure, trial of a collective action of this type and magnitude is no small undertaking. But other courts have managed similar litigation involving donning and doffing in the meat and poultry processing industry, and objections on this basis are accordingly unfounded. *See In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1372, 1380 (M.D. Ga. 2010) (collecting cases).

For these reasons, a collective action would be a fair and efficient means of resolving plaintiffs' claims, and this third and final factor therefore favors certification. Because he other two factors do as well, defendant's motion to decertify the conditionally certified class should be denied.

11

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendant's motion to decertify the conditionally certified class be DENIED and that this case proceed as a collective action as conditionally certified (*see* D.E. 233 at 2) subject to the modifications in class membership previously ordered by the court (*see* D.E. 383, 389).

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until **3 September 2010** to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 23 day of August 2010.

James E. Gates
United States Magistrate Judge