IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:07-CV-166-H
ALL CASES

| | |
|---|---|
| LEE LEWIS and JANICE HOSLER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| SMITHFIELD PACKING COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

This case comes before the court on the motion by defendant Smithfield Packing Company, Inc. ("defendant") to exclude the expert opinions of Kenneth Mericle ("Mericle") (D.E. 361).[1] The motion was referred to the undersigned for a memorandum and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), by order of the presiding Senior District Judge. The motion has been fully briefed.[2] For the reasons that follow, it will be recommended that the motion be denied. This recommendation and the underlying analysis are, of course, based on the record as it currently stands. It is therefore subject to further development of the record in proceedings before and during trial, and the authority of the presiding Senior District Judge over such proceedings.

## BACKGROUND

In this action, plaintiffs Lee Lewis, et al. ("plaintiffs") assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., arising from their employment with Smithfield

---

[1] The expert opinions referenced are those reflected in the report by Mericle that the parties have filed, his deposition testimony of record, and his anticipated testimony at trial.

[2] In support of its motion, defendant filed a memorandum of law (D.E. 362) with exhibits (D.E. 362-1 through 362-31), plaintiffs filed a memorandum of law (D.E. 380) with exhibits (D.E. 380-1 through 380-7) in opposition, and defendant filed a reply brief (D.E. 393) with exhibits (D.E. 393-1 through 393-6).

Packing Company, Inc. ("defendant") at its Tar Heel, North Carolina meat processing facility. In their third amended complaint, plaintiffs allege that defendant failed to compensate them for time spent engaged in donning and doffing protective equipment and related activities. (Third Am. Compl. (D.E. 174) ¶ 12). The specific activities for which they allege they were not compensated include: (1) obtaining their required protective equipment from designated areas in the plant; (2) walking to and from the work station, processing line, or both; (3) donning and doffing protective items and hygiene-related equipment before their shift, during their shift, and after their scheduled shift ends; (4) waiting for a shift to begin or for relief to arrive; (5) washing and cleaning tools and other equipment; and (6) other pre- and post-shift activities required by defendant. (*Id.*).

Plaintiffs seek unpaid back wages, unpaid benefits, liquidated damages, attorneys' fees, and other relief. (*Id.* ¶ 20). They assert their FLSA claims as a collective action, pursuant to the provisions of that statute, 29 U.S.C. § 216(b). (*Id.* ¶ 2). Defendant generally denies plaintiffs' material allegations. (*See* Def.'s Ans. (D.E. 189)).

## DISCUSSION

### I. STANDARD FOR ADMISSION OF EXPERT TESTIMONY

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). A district court is granted broad latitude in making its determination on the admissibility of proposed expert testimony. *United States v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994) ("The trial judge has broad discretion under Rule 702.").

Rule 702 provides that expert testimony is appropriate when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further provides that a witness qualified as an expert may be permitted to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* Courts have distilled Rule 702's requirements into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must carry out the special gate-keeping obligation of ensuring that expert testimony meets both requirements. *Kumho Tire*, 526 U.S. at 147; *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006).

In order to be considered relevant, the proposed expert testimony must appear to be helpful to the trier of fact. *See Daubert*, 509 U.S. at 591-92. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (cited in *Lacayo v. Sodoma*, 122 F.3d 1061 (Table), 1997 WL 583639, at *3 (4th Cir. 22 Sept. 1997)); *accord Koger v. Norfolk S. Ry. Co.*, No. 1:08-0909, 2010 WL 692842, at *1 (S.D. W. Va. 23 Feb. 2010) (citing *Kopf*).

"'[T]he test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Wilson*, 484 F. 3d 267, 274 (4th Cir. 2007) (emphasis added) (quoting *Kumho Tire*, 526 U.S. at 141-42). One factor pertinent to reliability is the proposed expert's qualifications. *See Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1266 (D. Kan. 2003). A witness may qualify to render expert opinions in any one of the five ways listed in Rule

3

702: knowledge, skill, experience, training, or education. *Kumho Tire*, 526 U.S. at 147. The Fourth Circuit has ruled that, when an expert's qualifications are challenged, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" *Kopf*, 993 F.2d at 377 (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989)); *accord The Harvester, Inc. v. Rule Joy Trammell & Rubio, LLC*, No. 3:09cv358, 2010 WL 2653373, at *1 (E.D. Va. 2 July 2010) (citing *Kopf*).

Additional factors also bear on the reliability of the expert's testimony. They may include: "(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its application; and (4) whether the theory or technique enjoys general acceptance within the relevant community." *Tunnell v. Ford Motor Co.*, 245 Fed. Appx. 283, 286 (4th Cir. 2007) (citing *Kumho Tire*, 526 U.S. at 149-50); *accord Daubert*, 509 U.S. at 593-94.

Of course, the admission of expert testimony must be considered within the context of the other rules of evidence. In particular, Rule 403 provides that the court must ensure that the probative value of any proffered evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As this court has noted, "[d]espite the court's ability to exercise broad discretion and flexibility when determining the admissibility of expert testimony, the court must balance this discretion with the concerns of Rule 403 to ensure that the probative value of the proffered testimony is not 'substantially outweighed by

the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 725 (E.D.N.C. 2007) (quoting Fed. R. Evid. 403).

## II. MERICLE'S QUALIFICATIONS AND OPINIONS

Mericle conducted a time study at defendant's Tar Heel facility. Plaintiffs seek to introduce at trial the 1 August 2009 report Mericle prepared on this study and related testimony as evidence of the amount of time required for donning, doffing, and clean-up activities, and walking between different points in the facility. To facilitate reference, a copy of the report is appended to this Memorandum and Recommendation, and citations to the report are to this copy of it.[3]

The report includes a copy of Mericle's curriculum vitae (Mericle Rep. 35-37). It shows that Mericle obtained a Bachelor's and Master's of Science from Iowa State University and a Ph.D. in Philosophy, Industrial Relations, from the University of Wisconsin. (*Id.* 35). He holds a certification in methods time measurement from the Methods Time Measurement Association. (Mericle Dep. (D.E. 380-3) 8:21-9:4). Mericle has served as a Professor of Industrial Relations at Massachusetts Institute of Technology, a faculty member at the Industrial Relations Research Institute at the University of Wisconsin and School for Workers at the University of Wisconsin-Extension, and the Director of the School for Workers. (Mericle Rep. 35). He is presently a Professor of Labor Education at the University of Wisconsin-Extension School for Workers. (*Id.*). He has published numerous articles. (*Id.* 36; Pub. List (D.E. 380-5)). He has also provided consultative services in the areas of industrial engineering, collective bargaining, high-performance

---

[3] The court compiled a separate copy of the report from the two copies filed by the parties because these copies have deficiencies that impede review. The copy filed with defendant's motion straddles two docket entries, half appearing at D.E. 362-4 and the remaining portion at D.E. 362-5. In addition, tables are out of sequence, Mericle's curriculum vitae appears among them, and several tables are interspersed among the narrative section of the report. The copy filed with plaintiffs' memorandum, at D.E. 380-4, is complete, but has the other problems noted. The pages in the copy appended to this Memorandum and Recommendation have been placed in the seemingly proper sequence. Page numbers in brackets have been inserted.

5

work systems, and compensation systems. (*Id.* 35). Among the studies he conducted was a time study on warehouse workers for the National Institute for Occupational Safety and Health within the United States Department of Health and Human Services about which he wrote an article ("Physical Fatigue and Stress in Warehouse Operations") in a peer-reviewed journal. (Mericle Dep. 14:15-25; 24:14-25:4; Pub. List). Mericle has also previously served as an expert in federal court cases. (Mericle Rep. 37).

In his report, Mericle offers his opinions on the average time it takes employees at the Tar Heel facility to perform 12[4] identified donning and doffing, and related clean-up activities, including time walking. (*Id.* 3, Table 1). Separate averages are provided for the overall facility, and the kill, cut, and conversion floors, respectively. (*Id.* 3, 4, Tables 3, 3a, 3b, 3c). He concludes that the estimates he provides are fair and reasonable estimates of the time required to perform the 12 activities. (*Id.* 4). Mericle's opinions are based, in part, on information gathered by him and two colleagues during site visits to the Tar Heel facility on three dates, 1-3 June 2009, on the first two to observe and film both the morning and afternoon shifts and on the third the morning shift alone. (*Id.* 2). During these visits, Mericle and his colleagues observed and videotaped employees engaging in the subject activities in the men's locker rooms, hallways, and production areas. *(Id.)*. In addition, Mericle measured various walking distances by using a walking wheel measuring device or by estimating the distances from prints of the facility provided by defendant. (*Id.* 3-4).

The basic methodology used by Mericle with respect to each activity other that walking was "to film continuously from the time the activity started until the time it ended in order to produce a continuous record of an entire activity." (*Id.* 2). He then analyzed the videotaped activity on this

---

[4] The overall facility estimates include an estimate for an additional activity. (*See* Mericle Rep., Table 3, entry for "Obtain gloves/smock from supply window.").

6

same continuous basis, without breaking down each activity into its constituent elements. (*See id.*
2, Table 1). As to the walking, he estimated the time for it by multiplying walking distances by an
estimated walking rate. (*Id.* 3).

## III. ADMISSIBILITY OF MERICLE'S OPINIONS

Defendant's challenge to Mericle's opinions is based solely on their failure to meet the reliability requirement. Defendant does not challenge their relevance and the court finds that they meet the relevance requirement for admissibility. The time required for donning and doffing and the related activities at issue are not within the everyday knowledge and experience of a lay juror. Mericle's opinions would provide the jury information on this issue and would therefore be helpful to it. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 946 (W.D. Wis. 2008).

Defendant challenges the reliability of Mericle's opinions, in part, on the grounds that Mericle lacks the requisite expertise in time studies to offer them. The court disagrees.

Mericle has extensive education in industrial engineering and has worked in that field for over 30 years. Principles from that field, and specifically the area of work measurement, underlie his opinions. (Mericle Dep. 113:11-21; 222:16-223:22; 225:19-226:23; 249:8-24). In addition, he has conducted other time studies, including studies like that here at meat processing plants, and, as indicated, has published an article on one such study. He holds a certification from a professional time measurement association. Although there is an apparent dearth of scholarly literature dealing specifically with the method used by Mericle, he explained at his deposition that the main focus of industrial engineering "is to set production standards, to estimate the amount of time that should be allowed for these kinds of activities" (*id.* 222:5-8), not as here to "measur[e] the amount of time that people are actually using to perform a particular activity" (*id.* 226:9-10). (*See id.* 223:4-6) ("I don't

7

think these kinds of studies are the primary focus of industrial engineering."). The court concludes that Mericle is qualified by his knowledge, skill, experience, and education to offer his opinions.

As to his methodology, defendant objects that Mericle did not follow certain practices used to develop industry standards for activities being studied. But, as indicated, the purpose of Mericle's study was not to develop such standards—that is, how much time particular activities should take—but rather the amount of time they actually do take.

Defendant also complains that Mericle did not break down activities into discrete elements and measure them separately pursuant to the elemental analysis methodology that its time study expert, Jeffrey Fernandez, used to develop his opinions. (*See* Fernandez Rep. (D.E. 352-4) 4). In contrast, as indicated, Mericle measured employees' activities on a continuous basis as they were actually performed. Although cast as a challenge to the reliability of Mericle's methodology, this complaint by defendant is grounded in a dispute over the underlying legal theory of the case. Plaintiffs contend that the Supreme Court's decision in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), which involved application of the so-called "continuous workday rule" to meat and poultry processing plants,[5] requires that actual activities be measured based on continuous work time. (*See* Plfs.' Mem. 3, 16; *see also* Plfs.' Mem. in Support of Disqual. Mot. (D.E. 353) 3). Defendant obviously disagrees. Its disagreement with plaintiffs' legal theory is not a basis upon which to find

---

[5] The continuous workday rule provides that the periods of time between the commencement of an employee's first principal activity of the workday and the completion of his last principal activity, excluding bona fide meal periods and rest breaks, must be included in the computation of hours worked. *Alvarez*, 546 U.S. at 28 n.3; 28-30. The *Alvarez* court ruled that any activity that is "integral and indispensable to a principal activity is itself a principal activity" and is therefore part of the continuous workday for which the employee must be compensated. *Id.* at 37 (internal quotation marks omitted). Because the donning and doffing of protective gear had been found by the trial courts to be such an integral and indispensable activity, the time spent on it was held to be compensable. *Id.* at 30, 37. The Court also ruled that the time spent by employees, during a continuous workday, walking between the changing area where they donned and doffed protective gear and the production area was includable in the computation of hours worked. *Id.* at 30, 37.

Mericle's opinions unreliable. Inconsistency of an expert witness's opinions with the legal theory of opposing parties is inherent in our adversarial court system, particularly in an area of the law, such as this, which is still developing.

Defendant also argues that plaintiffs' methodology is deficient because it does not conform to generally accepted statistical methods for sampling and extrapolations. Mericle readily acknowledges, though, that he did not attempt to employ such statistical methods because practical limitations on the time required to collect data and cost precluded it. (Mericle Dep. 115:8-23; *see also id.* 91:16-92:4). At the same time, he noted that tailoring a study to meet constraints on time and cost, as he did, is consistent with the standards of industrial engineering. (*Id.* 91:16-92:4). Expert testimony need not be "irrefutable or certainly correct" to be sufficiently reliable to be admitted. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999); *see also PBM Products, LLC v. Mead Johnson Nutrition Co.*, No. 3:09-CV-269, 2010 WL 56072, at *8 (E.D. Va. 4 Jan. 2010) (rejecting motion to exclude expert where arguments primarily attacked conclusions reached, not methods used).

Moreover, in two other cases, non-statistical methodologies used by Mericle similar to the methodology he used in this case were found by the court to be reliable. *Chavez v. IBP, Inc.*, No. CV-01-5093-RHW, 2004 WL 5520002, at *4 (E.D. Wash. 8 Dec. 2004); *Alvarez v. IBP, Inc.*, No. CT-98-5005-RHW, 2001 WL 34897841, at *12 (E.D. Wash. 14 Sept. 2001), *judgment aff'd in part, rev'd in part*, 339 F.3d 894 (2003), *aff'd*, 546 U.S. 21 (2005).[6] The district court in *Alvarez* found that "the methodology of Dr. Mericle was followed by the [United States Department of Labor ("Labor Department")] in its time studies involving IBP, and seems to be accepted in the meat

---

[6] For a discussion of the methodology used by Mericle in *Chavez* see Mericle Dep., *e.g.*, 85:1-96:3 and in *Alvarez* see Mericle Dep., *e.g.*, 47:21-48:15; 73:9-77:19; 86:22-88:12.

9

packing industry." *Id.* Mericle also conducted a similar non-statistical time study for the Labor Department, the plaintiff, in *Chao v. George's Processing, Inc.*, Civ. Act. No. 02-3479 (W.D. Mo.), which settled without a ruling on the admissibility of Mericle's opinions. (*See* Mericle Rep. 37; Mericle Dep. 96:4-105:11; *Chao* Compl. & Consent Judg. (D.E. 380-6)).

In advancing many of its arguments, defendant advocates a rigid application of the factors bearing on the reliability of a methodology listed by the Fourth Circuit in *Tunnell v. Ford Motor Co.*, 245 Fed. Appx. 283, 287 (4th Cir. 2007), namely, error rate, controls on application, peer review, and general acceptance. But the Supreme Court and the Fourth Circuit itself have instructed that the determination on reliability should be a flexible one. "In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." *Westberry*, 178 F.3d at 261 (citing *Kumho Tire*, 526 U.S. at 150-52). The circumstances here, including the nature of the subject matter as the donning and doffing of equipment as opposed to some intangible and esoteric biological or chemical process, do not demand the rigorous level of scientific precision for admissibility that defendant advocates.

It is apparent, in any event, that Mericle's methodology did include safeguards to ensure reliability. For example, he and his colleagues generally filmed whoever was in the filming location and did not attempt to select specific individuals. (Mericle Rep. 2). Each camera displayed the time in hours, minutes, and seconds on the videotape. (*Id.*). They attempted to cover all of the 12 activities at issue and maximize the number of observations in the time available. (*Id.*). They ultimately filmed 547 discrete observations of these activities over the two-and-a-half days they

spent on site and compiled a table describing each observation. (*Id.* 2 & Table 2). The number of observations for each activity ranged from 15 to 137. (*Id.*, Table 3). Notably, defendant's time study expert used the same basic technique of filming employees as they performed the relevant activities to obtain the data for his study. (Fernandez Rep. 2).

Ultimately, defendant's objections go to the weight of Mericle's opinions, not their admissibility. These objections can appropriately be advanced through cross examination of Mericle and presentation of contrary evidence. *See Westberry*, 178 F.3d at 261; *Reynolds v. Crown Equip. Corp.*, 5:07CV00018, 2008 WL 2465032, at *15-16 (W.D. Va. 16 June 2008) (finding expert's testimony sufficiently reliable and noting that inconsistencies would be subject to vigorous cross-examination and would go to the weight given expert's testimony, not admissibility). For this and the other reasons stated, defendant's motion should be denied.

## CONCLUSION

For the foregoing reasons, and subject to further pretrial and trial proceedings and the authority of the presiding Senior District Judge over such proceedings, IT IS RECOMMENDED that defendant's motion to exclude Mericle's opinions be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until **7 September 2010** to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

11

Case 7:07-cv-00166-H   Document 423   Filed 08/26/10   Page 11 of 12

SO ORDERED, this 25 day of August 2010.

James E. Gates
United States Magistrate Judge