IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:07-CV-166-H
ALL CASES

| | |
|---|---|
| JANICE HOSLER, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) **MEMORANDUM AND** |
|  | ) **RECOMMENDATION** |
|  | ) |
| SMITHFIELD PACKING COMPANY, INC., | ) ) |
| Defendant. | ) |

This case comes before the court on the motion (D.E. 345) of defendant Smithfield Packing Company, Inc. ("defendant") for partial summary judgment dismissing with prejudice all claims asserted by plaintiffs Lee Lewis, et al. ("plaintiffs") for pre- and post-shift donning, doffing, washing, walking, and waiting time under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. arising after 1 July 2009. The motion has been fully briefed[1] and was referred to the undersigned for a memorandum and recommendation. For the reasons that follow, it will be recommended that the motion be allowed.

## BACKGROUND

In this action, plaintiffs assert claims under the FLSA arising from their employment with defendant at its Tar Heel, North Carolina hog processing facility. In their third amended complaint, plaintiffs allege that defendant failed to compensate them for time spent engaged in donning and doffing protective equipment and related activities. (Third Am. Compl. (D.E. 174) ¶ 12). The

---

[1] The motion is supported by a memorandum (D.E. 346), and exhibits (D.E. 346-1 to 346-12). Plaintiffs have filed a memorandum in opposition to defendant's motion (D.E. 373) with exhibits (D.E. 373-1 through 373-4). Defendant filed a reply (D.E. 389) and additional legal authorities (D.E. 389-1 through 389-8). Plaintiffs later filed a notice of supplemental authority (D.E. 408, 409) to which defendant filed a response (D.E. 414). Defendant also filed a notice of supplemental authority (D.E. 415).

specific activities for which they allege they were not compensated include: (1) obtaining their required protective equipment from designated areas in the plant; (2) walking to and from the work station, processing line, or both; (3) donning and doffing protective items and hygiene-related equipment before their shift, during their shift, and after their scheduled shift ends; (4) waiting for a shift to begin or for relief to arrive; (5) washing and cleaning tools and other equipment; and (6) other pre- and post-shift activities required by defendant. (*Id.*).

Plaintiffs seek unpaid back wages, unpaid benefits, liquidated damages, attorneys' fees, and other relief. (*Id.* ¶ 20). They assert their FLSA claims as a collective action, pursuant to the provisions of that statute, 29 U.S.C. § 216(b). (*Id.* ¶ 2). Defendant generally denies plaintiffs' material allegations. (*See* Def.'s Ans. (D.E. 189)).

In December of 2008, the United Food and Commercial Workers, Local No. 1208 ("UFCW") was certified as the collective bargaining representative of all production employees at the Tar Heel facility. (Def.'s Mem., Stmt. of Undisputed Facts ¶ 2; Pls.' Mem. 4).[2] Defendant and the UFCW entered into a collective bargaining agreement with an effective date of 1 July 2009. ((Def.'s Mem., Stmt. of Undisputed Facts ¶ 4; Pls.' Mem. 4; 1 July 2009 Labor Agreement ("CBA") (D.E. 346-2, -3)). During the formal and informal bargaining process, the UFCW and defendant negotiated the appropriateness of making changes to defendant's pay practices for time spent donning, doffing, washing, walking, or waiting. (Def.'s Mem., Stmt. of Undisputed Facts ¶¶ 9-10; Pls.' Mem. 4). The CBA ultimately agreed to by the parties sets out the "rates of pay, hours of work, and working conditions to be observed by the parties." (CBA (D.E. 346-2) art. 2).

---

[2] Defendant's memorandum includes a statement of purportedly undisputed material facts, comprised of numbered paragraphs. (Def.'s Mem. 3-8). In their memorandum, plaintiffs indicate that they do not dispute any of the alleged facts except those contained in paragraphs 14, 23, and 26. (Plfs.' Mem. 3-4). This Memorandum and Recommendation relies only on alleged facts that plaintiffs state they do not dispute.

Article 9 of the CBA provides for payment of employees on a gang time system. It states:

> Employees shall be paid on the basis of actual hours worked or gang time based on the department in which they work. On the Kill, the stick area (stick, shackle, CO2 Operator) operates on its own gang time. Otherwise, gang time shall be computed on the starting and finishing time of the gutter (the last hog that leaves the Gutter will be the last hog past the final rail inspection station also. . . . Any hogs that follow the last hog gutted will be figured separately based on the chain speed, and added to the regular gang time for that specific day. This will pertain to workers from final inspection on into and including the cooler men.
>
> Gang time on the Cut will be similarly computed from the time hogs drop onto the break up table.
>
> Management will post daily gang times. Any discrepancies shall be subject to the grievance and arbitration procedures.

(*Id.* art. 9, § 2).

Compensation for donning, doffing, and related activities is addressed in Article 5 of the CBA. In it, the parties acknowledge defendant's current practices for paying for such activities, which are described, and agree to meet about possible modification of those practices after conclusion of ongoing litigation. The relevant provision reads:

> The parties acknowledge the Company's practice of paying employees for donning, doffing, washing, sanitizing and related activities as follows: a portion of the 15 minutes of pay for the thirty minute break for production employees is intended to compensate affected employees for such activities; employees who are required to wear special protective personal equipment (scabbards, mesh etc.) will be paid three (3) minutes at the beginning of the workday, two minutes for the second break of the day and five (5) minutes at the end of the day for such activities. All other employees will be paid for three (3) minutes for any such activities during the day. The parties also acknowledge that there is ongoing litigation concerning the Company's donning and doffing practices and they agree to meet at the conclusion of such litigation to determine whether modification to these practices are required, and if so, what those modifications will be.

(*Id.* art. 5, § 2(b)).

3

Defendant requires production employees to wear some combination of protective equipment on the production floor, including disposable smocks, bump caps, ear plugs, hair nets, coveralls, rubber gloves, and cotton gloves. (Def.'s Mem., Stmt. of Undisputed Facts ¶ 27; Pls.' Mem. 4). Some production employees also wear freezer suits and/or safety glasses. (*Id.*). In addition, knife-wielding employees also wear some combination of mesh gloves, Kevlar gloves, plastic arm guards, plastic belly guards, a chain with an aluminum scabbard, and a steel to sharpen their knives. (Def.'s Mem., Stmt. of Undisputed Facts ¶ 29; Pls.' Mem. 4).

## DISCUSSION

### I. APPLICABLE LEGAL PRINCIPLES

#### A. Summary Judgment Standard

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary

judgment is appropriate."). If the movant meets its burden, then the non-moving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The non-moving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Rule 56(a) permits the court to grant summary judgment "with respect to all claims in an action or only some claims in a multiple claim action." *Evergreen Intern., S.A. v. Marinex Const. Co., Inc.*, 477 F. Supp. 2d 697, 699 (D.S.C. 2007). A motion for partial summary judgment "utilizes the same standards required for consideration of a full motion for summary judgment." *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994). However, a party is not entitled to partial summary judgment unless such judgment would be dispositive of an entire claim. *Evergreen*, 477 F. Supp. 2d at 699. The "piecemealing" of select elements on a single claim is not permitted by Rule 56. *Id.* Further, "partial summary judgment is properly withheld where, on the basis of the cold record, a considerable expenditure of judicial time and effort will be required 'to sift out and piece together the undisputed facts essential to a summary judgment.'" *Toyoshima Corp. of California v. Gen. Footwear, Inc.*, 88 F.R.D. 559, 560 (S.D.N.Y. 1980) (quoting *Perma Research & Dev. Co. v. Singer Co.*, 308 F. Supp. 743, 750 (S.D.N.Y. 1970)). "In a complex fact-intensive case . . . , a court has discretion to deny a partial summary judgment, even if such is justified, in order to proceed more efficiently and more expeditiously with a definitive resolution." *Ryste & Ricas, Inc. v. United States*, 50 Fed. Cl. 85, 90 (2001). "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial." *Kennedy v. Joy Tech., Inc.*, 269 Fed. Appx. 302, 308 (4th Cir. 2008).

5

## B. FLSA

The FLSA requires employers to pay covered employees for hours worked. *See* 29 U.S.C. §§ 206, 207. The Portal-to-Portal Act, 29 U.S.C. §§ 251-62, amended the FLSA to provide that employers are generally not required to compensate an employee for "activities which are preliminary or postliminary" to "the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254. But "activities performed either before or after the regular work shift . . . are compensable . . . if those activities are an *integral and indispensable* part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (emphasis added).

The FLSA also has a provision dealing specifically with "changing clothes or washing at the beginning or end of each workday." 29 U.S.C. § 203(o). This provision excludes from "hours worked," that is, the compensable workweek, any "time spent in changing clothes or washing at the beginning or end of each workday" that is excluded "by the express terms of or by custom or practice under a bona fide collective-bargaining agreement." *Id.* Section 203(o) reads in full as follows:

### § 203. Definitions

. . . .

(o) Hours Worked.– In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in *changing clothes or washing* at the beginning or end of each workday which was excluded from measured working time during the week involved by *the express terms of or by custom or practice* under a bona fide collective-bargaining agreement applicable to the particular employee.

*Id.* (emphasis added). Under § 203(o), even where changing clothes and washing are integral and indispensable to an employee's principal activities and would be otherwise compensable, an employer and union may agree to opt out of paying for the time for such activities under a collective bargaining agreement. *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 213 (4th Cir. 2009).

6

## II. ANALYSIS OF DEFENDANT'S MOTION

Defendant seeks partial summary judgment on all claims for pre-and post-shift donning, doffing, and washing time and the associated time for walking and related activities after the 1 July 2009 effective date of the CBA on the grounds that such time is excluded by § 203(o) from "hours worked." In response, plaintiffs contend that § 203(o) does not apply because: (1) defendant has the burden of proof under § 203(o) (and has not met it); (2) the donning, doffing, and washing activities at issue are not "changing clothes or washing" within the meaning of § 203(o); (3) the time for the activities at issue is not excluded by the "express terms of or custom or practice" under the CBA; and (4) the pre- and post-shift walking and waiting time associated with the donning, doffing, and washing activities are not subject to § 203(o) in any event. The court will examine each issue in turn below.

### A. Burden of Proof

"An employee who brings suit . . . for unpaid minimum wages or unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). But the burden of proof rests on the employer to establish the applicability of an exemption from coverage by the FLSA. *See, e.g., Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206, 209 (1966).

Plaintiffs contend that § 203(o) constitutes an exemption under the FLSA and that defendant therefore has the burden of proving that it applies (which it has purportedly failed to meet). Defendant disagrees and contends that plaintiffs have the burden of showing that the activities at issue do not fall within § 203(o). *See Allen v. McWane, Inc.*, 593 F.3d 449, 458 (5th Cir. 2010).

7

While recognizing that some courts have found § 203 to be an exemption, *see Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003), *aff'd on other grounds, IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), the court agrees with the greater weight of authority in finding that § 203(o) is not an exemption, but rather a definitional exclusion, appearing as it does in a section setting out definitions and entitled "Definitions." *Allen*, 593 F.3d at 458; *Salazar v. Butterball, LLC*, No. 08-cv-2071, 2010 WL 965353, at *3 (D. Colo. 15 Mar. 2010) (refusing to construe § 203(o) as an exemption).[3] Accordingly, plaintiffs have the burden of showing that the time for the activities at issue does not come within § 203(o).

## B. Satisfaction of "Changing Clothes or Washing" Provision

Plaintiffs contend that § 203(o) does not apply, in part, because the donning and doffing of the personal protective equipment at issue does not come within the "changing clothes" provision of § 203(o). They do not contest that the donning and doffing activity constitutes "changing," but rather argue that not all the personal protective equipment constitutes "clothes." Defendant maintains that all the equipment does qualify as "clothes."

The court believes this issue is controlled by the Fourth Circuit's decision in *Sepulveda*. There, the Fourth Circuit considered whether personal protective equipment used by production line employees in a chicken-processing plant constituted "clothes" for purposes of § 203(o). The items they were required to wear were: "(1) safety, steel-toe shoes, (2) a United States Department of Agriculture (USDA) required smock, (3) a USDA required plastic apron, (4) safety glasses, (5) ear

---

[3] Defendant argues that in *Sepulveda*, 591 F.3d at 214 n.1, the Fourth Circuit expressly rejected the view that § 203(o) is an exemption. It quotes the phrase used in the cited footnote reading "the section simply defines 'Hours Worked' rather than exempting entire categories of employees from FLSA's protection." (Def.'s Mem. 2) (quoting *Sepulveda*, 591 F.3d at 214 n.1); 29 U.S.C. § 203(o). But, read in context, this phrase was referring to the rationale of those courts that have rejected the exemption theory. As to its own position, the court stated, "We need not enter this debate." *Sepulveda*, 591 F.3d at 214 n.1.

8

plugs, (6) a bump cap, (7) a hair net, (8) USDA required rubber gloves, (9) sleeves, and (10) arm shields." *Sepulveda*, 591 F.3d at 212. Applying the basic principle that words in a statute are to be given their ordinary meaning, the court found "clothes" to be defined in a leading dictionary as "clothing," which in turn was defined as "all the garments and accessories worn by a person at any one time," and that "this definition is consistent with the common understanding of the word." *Id.* at 214-15 (internal quotation marks omitted) (quoting in part *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 955 (11th Cir. 2007)). It found that all the items at issue in that case fell within this definition, such items as shoes, gloves, and sleeves qualifying as garments, and such items as bump caps, ear plugs, and arm shields qualifying as accessories. *Id.* at 215.

The court rejected the argument that "clothes" refers to only ordinary or street clothes and excludes protective clothing, in part, because the statute used no such modifiers. *Id.* It also reasoned that clothing, even if protective, is still clothing. *Id.* ("We fail to see . . . how protective clothing is somehow not clothing."). The court further observed that the "piece-by-piece approach to clothing" urged by the employees "would be difficult, if not impossible, for courts to administer in a consistent and coherent manner." *Id.* at 215-16.

*Sepulveda* is controlling here partly because many of the items of equipment that the court found to be "clothes" are the same as those in issue here, including smocks, safety glasses, ear plugs, bump caps, hair nets, rubber gloves, and arm guards. *Compare id.* at 212 *with* Def.'s Mem., Stmt. of Undisputed Facts ¶ 27. The remaining items present in this case but not in *Sepulveda* would qualify as either garments (*e.g.*, coveralls, freezer suits, cotton gloves, mesh gloves, Kevlar gloves) or accessories (*e.g.*, plastic belly guards, chains with an aluminum scabbard, steels to sharpen knives)

9

within the definition of "clothes" embraced in *Sepulveda*. The fact that some of these items are protective would not, of course, negate their being "clothes" under the principles of *Sepulveda*.

Plaintiffs rely principally on the Ninth Circuit's decision in *Alvarez*. It held so-called "unique gear," such as Kevlar gloves, as opposed to "non-unique gear," such as safety goggles, worn in the beef and pork industries not to be "clothes" within the meaning of § 203(o). *Alvarez*, 339 F.3d at 905. That decision, of course, is not binding on this court, as is *Sepulveda*, and the *Sepulveda* court did not adopt either its holding or rationale. *Sepulveda*, 591 F.3d at 216 n.2.

Plaintiffs also rely on a 16 June 2010 United States Department of Labor ("DOL") Administrator's Interpretation (D.E. 409) finding that "clothes" under § 203(o) does not include "protective equipment worn by employees that is required by law, by the employer, or due to the nature of the job." 16 June 2010 DOL Interp. at *4. While the court has considered this Interpretation, it also is not binding on this court and obviously does not supersede a decision of the Fourth Circuit. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (holding that interpretations are not controlling but may be resorted to for guidance).[4]

The court concludes that all the items of protective equipment at issue are "clothes" within the meaning of § 203(o) and therefore that the donning and doffing activity at issue constitutes "changing clothes" within the meaning of the statute. Numerous decisions are in accord. *See, e.g., Spoerle v. Kraft Foods Global, Inc.*, No. 09-2691, 2010 WL 2990830, at *1 (7th Cir. 2 Aug. 2010) (relying on *Sepulveda* to conclude that protective gear is "clothes" under § 203(o)); *Bejil v. Ehticon,*

---

[4] The Fourth Circuit, of course, decided *Sepulveda* before this Interpretation was issued. Notably, however, the *Sepulveda* court observed that the DOL had issued two prior opinion letters in 2002 and 2007 consistent with the court's position, but that at least two others had been issued in 1997 and 2001 that reached the opposite conclusion. 591 F.3d at 216 n.3. The court affirmed that its "view rests upon the language of the statute, not upon the gyrating agency letters on the subject." *Id.* It is therefore questionable whether the most recent Interpretation would have a material effect on its analysis of the issues presented in *Sepulveda*.

*Inc.* 269 F.3d 477, 480 n.3 (5th Cir. 2001) (holding that protective gear constitutes "clothes" under § 203(o)); *In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1358, 1367 (M.D. Ga. 2010) ("Accordingly, the Court concludes that donning and doffing of sanitary and protective gear such as smocks, hairnets, beard nets, gloves, and earplugs is 'changing clothes' within the meaning of § 203(o)."); *Arnold v. Schreiber Foods, Inc.*, 690 F. Supp. 2d 672, 678 (M.D. Tenn. 2010) (agreeing with majority view that "clothes" under § 203(o) includes mandated hard hats, safety glasses, earplugs, and hair and beard nets); *Salazar v. Butterball, LLC*, 2010 WL 965353, at * 7 (finding that hard hats, hair nets, safety glasses, ear protection, aprons, blue coats, boots, overshoes, arm guards, plastic sleeves, mesh gloves, and/or liner gloves all constitute "clothes").

Plaintiffs also contend that the washing of gear at issue in this case does not come within the term "washing" as used in § 203(o), which they say is limited to washing one's person. But in *Sepulveda*, the Fourth Circuit expressly rejected this contention, reasoning that "washing," like "clothes," is not modified by the statute, and held that "washing" includes washing gear. *Sepulveda*, 591 F.3d at 216 n.4.[5] The washing activities at issue in this case therefore constitute "washing" within the meaning of § 203(o). Thus, the donning and doffing and related washing activities at issue in this case fall within the "changing clothes or washing" provision of § 203(o) and are subject to it.

---

[5] The court recognizes that the majority of courts appear to conclude that "washing" under the statute is limited to washing of the person and does not include protective gear. *See, e.g., In re Tyson Foods, Inc.*, 694 F. Supp. 2d at 1366 n.1 ("Since the term 'washing' as used in § 203(o) 'is limited to washing one's body and does not include the cleaning and sanitizing of protective clothing,' the Court finds that time spent sanitizing safety and sanitary gear, including gloves, cannot be excluded under § 203(o).") (internal citations omitted)); *Arnold.*, 690 F. Supp. 2d at 678 ("The vast majority of courts to address the issue have held that § 203(o) only covers time spent by an employee washing his or her body, not his or her work equipment."); *Johnson v. Koch Foods*, 670 F. Supp. 2d 657, 668 (E.D. Tenn. 2009) (holding that "'washing' as that term is used in § 203(o) is limited to washing of the person and does not include the sanitizing and cleaning of the safety equipment and protective clothing performed by plaintiffs").

## C. Satisfaction of "Express Terms of or Custom or Practice" Provision

Plaintiffs contend that the activities at issue do not come within § 203(o) on the independent ground that the time taken for them is not excluded by either the "express terms" of or by "custom or practice" under the CBA. Defendant argues that the activities are excluded in both ways.

As indicated, the CBA does expressly address the issue of compensation for the activities in question by acknowledging defendant's current payment practices for them, describing these practices in detail, and indicating the parties' agreement to meet about the practices after litigation over them ends. (CBA art. 5, § 2(b)). Whether this provision constitutes an exclusion of the subject time by "express terms" of the CBA within the meaning of § 203(o) is not entirely clear because the provision does not purport itself to be mandating the pay practices, but simply to be reciting practices already being followed. *See Turner v. City of Philadelphia*, 262 F.3d 222, 226 n.3 (3d Cir. 2001) ("If the formal collective bargaining negotiations result in the inclusion of a specific non-compensability provision in the collective bargaining agreement, the § 203(o) exclusion would apply because change time is made non-compensable by the 'express terms of' the agreement."). The court need not make a definitive determination on that point, however, because the time clearly is excluded by the alternate means of "custom or practice" under the CBA.

Specifically, "[a] policy concerning compensation (or non-compensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA." *Anderson*, 488 F.3d at 958-59. Here, of course, there was such a policy and it was written in the CBA itself, if not elsewhere.

Moreover, the "custom or practice" provision is satisfied by the existence of a policy even if the parties did not discuss the compensation issues involved in negotiating the collective bargaining agreement; the law presumes the union's acquiescence to the policy in that circumstance. *See Allen*, 593 F.3d at 457 ("[E]ven when negotiations never included the issue of non-compensation for changing time, a policy of non-compensation for changing time that has been in effect for a prolonged period of time, and that was in effect at the time a CBA was executed, satisfies § 203(o)'s requirement of a 'custom or practice under a bona fide' CBA."); *Anderson*, 488 F.3d at 958-59. In this case, as indicated, the issue was negotiated and acquiescence of the union is expressly stated in the CBA. *Bejil*, 269 F.3d at 480 (finding that where parties negotiated over the payment issue, it resulted in a custom or practice, even where the CBA was wholly silent on the issue).

The court rejects plaintiffs's suggestion that the policy was not in place for a long enough duration to constitute a "custom or practice." Under the principles of the cases cited, it is sufficient if the policy is in effect long enough for the union to know about it and make it the subject of negotiations over the collective bargaining agreement if it cares to do so, which the union here indisputably did. The court also rejects the contention that the agreement to meet about modification of the current pay practices after the termination of litigation somehow precludes the finding of a "custom or practice." All that provision signifies is that the "custom or practice" that does exist may be the subject of further negotiation. It does not vitiate the existence of that policy or the union's acquiescence to it. *See In re Tyson Foods*, 694 F. Supp. 2d at 1369 ("The Court rejects Plaintiffs' argument that a mere agreement to disagree and let the issue be decided by litigation means that the employees have not acquiesced to the practice.")

13

For this and the other reasons stated, the court finds that the time for pre-and post-shift donning, doffing, and washing after 1 July 2009 falls under § 203(o) and is thereby excluded from measured working time during the week, pursuant to that section. The portion of defendant's motion seeking dismissal of all claims for such time should accordingly be allowed.

### D. Exclusion of Pre-and Post-shift Walking and Waiting Time

Plaintiffs argue that even if pre- and post-shift donning, doffing, and washing is subject to § 203(o), the associated walking and waiting (*i.e.*, after the pre-shift activities and before the post-shift activities) remains compensable. Relying on principles in the Supreme Court's decision in *Alvarez*, 546 U.S. at 37, they contend that the donning, doffing, and washing are integral and indispensable to an employee's principal activities and are therefore themselves principal activities; that the subjection of the donning, doffing, and washing to § 203(o) does not deprive them of their character as principal activities; and that if such donning, doffing, and washing is an employee's first principal activity it would mark the start of the workday and any walking or waiting time thereafter that is itself integral and indispensable to the donning, doffing, and washing would be part of the continuous workday and thereby compensable under the FLSA. Although the Fourth Circuit has yet to decide the issue, there is substantial support for plaintiffs' view in the decisions of other courts. *See, e.g., In re Tyson Foods*, 694 F. Supp. 2d 1371 ("Therefore, post-donning/pre-doffing sanitizing and walking time may be compensable even if the donning and doffing time itself is not compensable, so long as the donning and doffing is found to be integral and indispensable to the employees' principal activities."); *Arnold*, 690 F. Supp. 2d at 685 (holding that § 203(o) does not bar plaintiffs from recovering compensation for post-donning and pre-doffing activities).

14

Nevertheless, the court finds plaintiffs' position unpersuasive. Clothes changing and washing that is found to be subject to § 203(o) cannot properly be deemed to be a principal activity, or integral or indispensable to a principal activity, and therefore cannot start or extend the workday. *See, e.g., Hudson v. Butterball, LLC*, No. 08-5071-cv-sw, 2009 WL 3486780, at *4 (W.D. Mo. 14 Oct. 2009); *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1011 (W.D. Tenn. 2008) ("[O]nce an activity has been deemed a section 3(o) activity, it cannot be considered a principal activity."); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 724 (E.D. La. 2008) ("[S]ince activities covered by § 203(o) cannot be considered 'principal activities' and do not start the work day, the walking time that occurs after a § 203(o) activity is rendered not compensable unless it is otherwise preceded by a principal activity"). "[A]n alternative finding would lead to the illogical result in which a section [20]3(o) activity, if determined to be a principal activity, would not be compensable but would begin the workday, converting otherwise noncompensable activity, such as walking time incurred after completing the section [20]3(o) activity, into compensable activity." *Sisk*, 590 F. Supp. 2d at 1011.

The court concludes that pre- and post-shift walking and waiting after 1 July 2009 are preliminary or postliminary activities that are not integral or indispensable to plaintiffs' principal activities and the time for such walking and waiting are therefore not compensable under the FLSA. The portion of defendant's motion seeking dismissal of all claims for such time should accordingly be allowed.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendant's motion for summary judgment be ALLOWED in its entirety and that all claims by plaintiffs for pre- and post-shift

15

donning, doffing, washing, walking, and waiting time under the FLSA arising after 1 July 2009 be DISMISSED with prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until **7 September 2010**, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 27 day of August 2010.

James E. Gates
United States Magistrate Judge