IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:07-CV-166-H
ALL CASES

JANICE HOSLER, et al.,           )
                                 )
          Plaintiffs,            )
                                 )
v.                               )          **MEMORANDUM AND**
                                 )          **RECOMMENDATION**
                                 )
SMITHFIELD PACKING COMPANY, INC.,)
                                 )
          Defendant.             )

This case comes before the court on several related motions for partial summary judgment,

pursuant to Rule 56 of the Federal Rules of Civil Procedure. One motion (D.E. 349) was filed by

plaintiffs Janice Hosler, et al. ("plaintiffs") and seeks denial of several defenses asserted by

defendant Smithfield Packing Company, Inc. ("defendant") in its answer. The other two were filed

by defendant. One (D.E. 358) seeks dismissal of certain claims relating to non-unique (*i.e.*, standard

or generic) items of equipment and the other (D.E. 356) dismissal of certain claims relating to knife

workers. The motions were referred to the undersigned for a memorandum and recommendation,

pursuant to 28 U.S.C. § 636(b)(1)(B), by the presiding Senior District Judge. The motions have been

fully briefed.[1] For the reasons set forth below, it will be recommended that each of the motions be

---

[1] Plaintiffs filed a memorandum of law (D.E. 360) and exhibits (D.E. 360-1 through 360-5) in support of their motion for partial summary judgment, defendant filed a memorandum of law (D.E. 378) and exhibits (D.E. 378-1 through 378-24) in opposition, and plaintiffs filed a reply (D.E. 394).

In support of its motion for partial summary judgment regarding non-unique items, defendant filed a memorandum of law (D.E. 359) and exhibits (D.E. 359-1 through 359-18), plaintiffs filed a memorandum of law (D.E. 379) and exhibits (D.E. 379-1 through 379-8) in opposition, and defendant filed a reply (D.E. 392) and exhibits (D.E. 392-1 through 392-4).

Defendant filed a memorandum of law (D.E. 357) and exhibits (D.E. 357-1 through 357-14) in support of its motion for partial summary judgment regarding knife worker plaintiffs, plaintiffs filed a memorandum of law (D.E. 381) and exhibits (D.E. 381-1 through 381-7) in opposition, and defendant filed a reply (D.E. 391) and exhibits (D.E. 391-1 through 391-4).

allowed in part and denied in part.

## BACKGROUND

### I. PLAINTIFFS' CLAIMS

In this action, plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., arising from their employment with defendant at its Tar Heel, North Carolina pork-processing facility. In their third amended complaint, plaintiffs allege that defendant failed to pay them overtime for time spent engaged in donning and doffing protective equipment and related activities. (Third Am. Compl. (D.E. 174) ¶¶ 1, 2, 12). The specific activities for which they allege they were not compensated include: (1) obtaining their required protective equipment (including non-unique items) from designated areas in the plant; (2) walking to and from the work station, processing line, or both; (3) donning and doffing protective items and hygiene-related equipment (including non-unique items) before their shift, during their shift, and after their scheduled shift ended; (4) waiting for a shift to begin or for relief to arrive; (5) washing and cleaning tools and other equipment; and (6) other pre- and post-shift activities required by defendant. (*Id.* ¶ 12).

Plaintiffs seek unpaid back wages, unpaid benefits, liquidated damages, attorneys' fees, and other relief. (*Id.* ¶ 20). They assert their FLSA claims as a collective action, pursuant to the provisions of that statute, 29 U.S.C. § 216(b). (*Id.* ¶ 2). Defendant generally denies plaintiffs' material allegations and asserts a number of affirmative and other defenses. (*See* Def.'s Ans. to Third Am. Compl. (D.E. 189)).

2

## II. FACTUAL BACKGROUND

### A. Undisputed Facts

The following facts are undisputed: Defendant employs approximately 4,000 hourly production workers at the Tar Heel facility. (Pls.' SJ Mem. (D.E. 360) 5[2], citing Les Nemec Dep. (D.E. 360-2) 29). The three main production areas of the facility are the kill department, the cut department, and the conversion department. (Pls.' SJ Mem. 5-6, citing Jeffrey Gough Dep. (D.E. 360-4) 75). In the kill department, the employees slaughter the hog and send the hog carcass to the cooler. (Pls.' SJ Mem. 6, citing Nemec Dep. 25-26). The cut department breaks the chilled carcass down into smaller parts and the conversion department further processes the rib sections, hams, and loins. (Pls.' SJ Mem. 6, citing Nemec Dep. 30-32).

The kill, cut, and conversion departments are all located on the first floor of the facility. (Pls.' SJ Mem. 6, citing Nemec Dep. 10). On the second floor are located locker rooms, cafeterias, laundry rooms, supply windows, a box storage area, and a break room. (Pls.' SJ Mem. 6, citing Nemec Dep. 10-14).

All production employees wear some combination of protective equipment on the production floor, including disposable smocks, hard hats, bump caps, ear plugs, hairnets, hard plastic arm guards, belly guards, scabbards, cotton gloves, rubber gloves, cut-resistant (Kevlar) gloves, and mesh

---

[2] This section consists primarily of facts taken from the statement of undisputed facts in the memorandum supporting plaintiffs' motion (Pls.' SJ Mem. 5-11) with which defendant did not indicate it had a dispute in its opposing memorandum (Def.'s Opp. SJ Mem. (D.E. 378) 3 n.3, 3-16). The other facts in this section are drawn from the statement of undisputed facts in the memorandum supporting defendant's motion regarding knife workers (Def.'s St. of Facts re Knife Workers (D.E. 357-9)) with which plaintiffs did not indicate they had a dispute in their opposing memorandum (Pls.' Opp. Knife Mem. (D.E. 381) 5-6). The court found it unnecessary for purposes of this section to draw on the additional statements of purportedly undisputed facts in the papers filed on the instant motions, in part, because they are largely duplicative of the facts relied upon from the other sources.

gloves.[3] (Pls.' SJ Mem. 7, citing Nemec Dep. 13-19). In addition, knife workers are issued a "steel," a tool to keep their knife edge sharp. (Pls.' SJ Mem. 7, citing Nemec Dep. 21). Employees are not allowed to begin work on the production floor unless they are wearing all required personal protective equipment (Pls.' SJ Mem. 9, citing Nemec Dep. 64), but defendant does not require plaintiffs to wear any sanitary or protective items other than while on the production floor (Def.'s St. of Facts re Knife Workers (D.E. 357-9) ¶ 7, citing Ronnie Simmons Dep. (D.E. 357-10) 42). Knife worker employees generally don and doff knife-related equipment right at their work station. (Def.'s St. of Facts re Knife Workers ¶ 28, citing Orrin McMillian Dep. (D.E. 357-12) 38-39). Employees who wear belly guards, arm guards, scabbards, and skinner gloves are first required to "dip" these items in a sanitizing solution. (Def.'s St. of Facts re Knife Workers ¶ 29, citing Danny Shelton Dep. (D.E. 357-10) 53, Colleen Rambo Dep. (D.E. 357-12) 79). The dip stations are located near the entrance to the production area or next to the production lines, which employees pass on their way to work stations. (Def.'s St. of Facts re Knife Workers ¶ 29, citing Simmons Dep. 47-49, Shelton Dep. 53).

At the conclusion of a shift, employees discard their disposable gear into garbage cans located at the exit of the department. (Def.'s St. of Facts re Knife Workers ¶ 45). Most knife workers must rinse their mesh gloves; wash their belly guard, scabbard, steel, and arm guard; and turn in their gloves. (Def.'s St. of Facts re Knife Workers ¶ 46, citing Nemec Dep. 39, 81, 98, 99). On the kill floor and part of the cut floor, however, designated employees rinse the knife workers'

---

[3] The cut-resistant gloves are made from a cotton weave material designed to protect them from being cut by a knife and mesh gloves are made from a metal mesh material. An arm guard is worn over the forearm and made from hard plastic. The belly guard is strapped around an employee's midsection and is a rectangular piece of plastic or vinyl. A scabbard is worn on a chain and strapped around an employee's waist and is used to hold a sharpened knife. (Def.'s St. of Facts re Knife Workers ¶ 6 n.2-8; Pls.' Opp. Knife Mem. 5).

4

mesh gloves. (Def.'s St. of Facts re Knife Workers ¶ 46, citing Rick Arthur Dep. (D.E. 357-12) 74, Rambo Dep. 65, Scott Piper Dep. (D.E. 357-12) 124, Ronnie Jackson Dep. (D.E. 357-13) 62, James Lanier Dep. (D.E. 357-12) 76-77, Shaun Sapp Dep. (D.E. 357-11) 48). Defendant provides lockers for any employees who want them, but it does not require any employees to use a locker. (Def.'s St. of Facts re Knife Workers ¶ 30, citing Gough Dep. 15, Lee Lewis Dep. (D.E. 357-10) 107, Barbara Jacobs Dep. (D.E. 257-10) 30, Phyllis Monk Dep. (D.E. 357-10) 24).

In addition to their regular pay, defendant gives its production employees additional minutes worth of pay to compensate them for time spent donning, doffing, and washing their personal protective equipment. (Pls.' SJ Mem. 9, citing Gough Dep. 43-55). Since November 2006, defendant has paid all employees on the production line three minutes' pay per day, and those who used knives and wore the requisite protective equipment for knife-use an additional seven minutes' pay a day for donning and doffing activities, for a total of ten minutes a day for knife workers. (Pls.' SJ Mem. 9, citing Gough Dep. 43-55, Nemec Dep. 72). Defendant based its decision to increase pay by seven additional minutes by conducting a donning and doffing time study intended to evaluate the time it took its knife workers to perform donning and doffing activities. (Pls.' SJ Mem. 9, citing Nemec Dep. 72).

Defendant allows its employees two breaks during an eight-hour shift. (Pls.' SJ Mem. 11, citing Gough Dep. 93). Each break is 30 minutes long. (Pls.' SJ Mem. 11, citing Gough Dep. 93). During the first break, employees are paid for 15 minutes of the time (with 15 minutes being unpaid) and the second break is unpaid in its entirety. (Pls.' SJ Mem. 11, citing Gough Dep. 93). Employees are required to remove their personal protective equipment during breaks with the exception of hard hats, hairnets, and ear plugs. (Pls.' SJ Mem. 11, citing Nemec Dep. 95-97). Smocks, knives, mesh

5

gloves, arm guards, scabbards, steels, cotton gloves, and cut-resistant gloves are not allowed to be worn in the cafeteria or rest room areas. (Pls.' SJ Mem. 11, citing Nemec Dep. 95-97).

## B.    Disputed Facts

How and when the employees obtain and put on some of their protective equipment is largely disputed by the parties. For example, plaintiffs contend that employees must obtain a new and clean smock from the supply windows at the plant each day. (Pls.' SJ Mem. 7, citing Nemec Dep. 38, Gough Dep. 88). Defendant counters that disposable items, including smocks, gloves, and hairnets, are obtained from either the supply room or various places on the production floor. (Def.'s Opp. SJ Mem. 4, 6). It further contends that some employees obtain their smocks at the end of their shift to wear the following day and some do not wear a smock at all. (Def.'s Opp. SJ Mem. 4, citing Earl Stephens Dep. (D.E. 378-7) 39-40, Nemec Dep. 13-14, Richard Slater Dep. (D.E. 378-7) 29-30, Jacobs Dep. (D.E. 378-3) 30, Simmons Dep. (D.E. 378-6) 40-41, Betty Chavis Council Dep. (D.E. 378-2) 46, Linda Gail Moody Vereen Dep. (D.E. 378-7) 25, William Wims Dep. (D.E. 378-7) 26, Lisa Ann Davis Dep. (D.E. 378-2) 22, 26, Deloris Shipman Dep. (D.E. 378-6) 11-12, 24). Defendant also contests plaintiffs' assertion that employees cannot bring a smock home to don there. (Pls.' SJ Mem. 7, citing Nemec Dep. 38, Gough Dep. 88; Def.'s Opp. SJ Mem. 5, citing Nemec Dep. 16, 38, Lee Lewis Dep. (D.E. 378-4) 32, 35-36, Richard Slater Dep. 20-21 (D.E. 378-7), Annie Thomas Dep. (D.E. 378-7) 2, Jennis Davis Dep. (D.E. 378-2) 24-25).

The parties also dispute the order in which employees don their protective equipment. Plaintiffs contend that the smock is put on first and that all other personal protective equipment is worn over the smock. (Pls.' SJ Mem. 7, citing Gough Dep. 88). Defendant cites to deposition testimony of individual plaintiffs, some of whom did not wear smocks at all, some of whom put on

6

their smock after their hairnet, ear plugs, or bump cap, and some of whom kept some personal protective gear on during breaks, even after removing their smocks. (Def.'s Opp. SJ Mem. 5-6).

While plaintiffs contend that workers are required to turn in their soiled cotton gloves at the end of their shift (Pls.' SJ Mem. 8, citing Gough Dep. 98-100), defendant maintains that employees may take cotton gloves home with them or reuse them from day to day (Def.'s Opp. SJ Mem. 8, citing Nemec Dep. 16, 38-39, Lewis Dep. 32, 35, Slater Dep. 20-21, Thomas Dep. 25, Davis Dep. 24-25, Barbara Jacobs Dep. (D.E. 378-3) 40, 50, Thomas Dep. 33). Similarly, plaintiffs contend that workers dispose of smocks during a break and obtain a fresh one during the same break, which is donned before putting the rest of their personal protective equipment back on. (Pls.' SJ Mem. 7-8, citing Gough Dep. 93-95). Defendant maintains that some employees hang their smock in the hallway outside of the cafeteria and do not obtain a new one (Def.'s Opp. SJ Mem. 6, citing Nemec Dep. 95) and that of those employees who do obtain a new smock during a break, some do it at the beginning of the break while others do it at the end as a matter of personal preference (Def.'s Opp. SJ Mem. 6, citing Jacobs Dep. 45, James Lanier Dep. (D.E. 378-4) 77, Thomas Dep. 32).

The parties also dispute how the employees are paid. Plaintiffs state that all production employees are paid under a "gang time" payment system. (Pls.' SJ Mem. 9, citing Gough Dep. 88). They say that a gang time payment system is one where "hourly employees are paid on a shift from the time the first piece of meat hits their work station at the beginning of the shift, until the last piece of meat hits their work station at the end of the shift." (Pls.' SJ Mem. 9, citing Gough Dep. 88). Under this system, all employees in a particular department are all paid the same number of hours. (Pls.' SJ Mem. 9, citing Gough Dep. 88). Defendant contends that the manner in which the employees are paid can vary by department, with some start times assigned to small groups of

7

employees at a particular job station and other start times applying to the entire department. (Def.'s Opp. SJ Mem. 9-10, citing Nemec Dep. 52-32, Rick Arthur Dep. (D.E. 378-2) 38, Colleen Rambo Dep. (D.E. 378-6) 19). It further maintains that the exact recording of compensable activities varies by department. (Def.'s Opp. SJ Mem. 10, citing Smith Dep. 44, Arthur Dep. 35).

## DISCUSSION

By their motions, plaintiffs seek partial summary judgment denying the following defenses asserted by defendant in its answer: (1) the Sixteenth Defense that donning and doffing of standard safety equipment—that is, non-unique equipment—is not compensable (Def.'s Ans. to Third Am. Compl., 7-8 ¶ 16); (2) the Twelfth and Fifteenth Defenses that the donning and doffing activities are not compensable because they are preliminary or postliminary to a principal activity (*id.* 7 ¶¶ 12, 15); (3) the Seventeenth Defense that the so-called "de minimis" defense applies (*id.* 8 ¶ 17); and (4) the Third Defense that defendant acted in good faith (*see id.* 5 ¶ 3). By its two motions, defendant seeks partial summary judgment dismissing: (1) all claims for overtime pay based on time spent donning and doffing, obtaining, and discarding non-unique items, and pre- and post-shift and pre- and post-break walking and waiting; and (2) all claims for overtime pay based on time spent by knife workers before donning unique cut-protective items and after doffing and washing such items (including obtaining, carrying, and depositing such items), walking, and waiting, and for imposition of any requirement that defendant measure individual time spent in compensable pre- and post-production activities.

As can be seen, there is an overlap in the issues to which each side's summary judgment respective motions are addressed. Therefore, rather than discuss each motion separately, the court will address the matters to which they relate, as follows: (1) non-unique items; (2) knife workers'

8

claims; (3) the de minimis defense; and (4) the good faith defense. Before undertaking this discussion, the court will review applicable principles of law under Rule 56 and the FLSA.

## I.    APPLICABLE LEGAL PRINCIPLES

### A.    Summary Judgment Standard

It is well established that a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets its burden, then the non-moving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The non-moving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Rule 56(a) permits the court to grant summary judgment "with respect to all claims in an

9

action or only some claims in a multiple claim action." *Evergreen Intern., S.A. v. Marinex Const. Co., Inc.*, 477 F. Supp. 2d 697, 699 (D.S.C. 2007). A motion for partial summary judgment "utilizes the same standards required for consideration of a full motion for summary judgment." *Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994). However, a party is not entitled to partial summary judgment unless such judgment would be dispositive of an entire claim. *Evergreen*, 477 F. Supp. 2d at 699. The "piecemealing" of select elements on a single claim is not permitted by Rule 56. *Id.* Further, "partial summary judgment is properly withheld where, on the basis of the cold record, a considerable expenditure of judicial time and effort will be required 'to sift out and piece together the undisputed facts essential to a summary judgment.'" *Toyoshima Corp. of California v. Gen. Footwear, Inc.*, 88 F.R.D. 559, 560 (S.D.N.Y. 1980) (quoting *Perma Research & Dev. Co. v. Singer Co.*, 308 F. Supp. 743, 750 (S.D.N.Y. 1970)). "In a complex fact-intensive case . . . , a court has discretion to deny a partial summary judgment, even if such is justified, in order to proceed more efficiently and more expeditiously with a definitive resolution." *Ryste & Ricas, Inc. v. United States*, 50 Fed. Cl. 85, 90 (2001). "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial." *Kennedy v. Joy Tech., Inc.*, 269 Fed. Appx. 302, 308 (4th Cir. 2008).

## B.    FLSA

The FLSA requires employers to compensate employees for hours worked, which includes each hour an employee is employed, as well as overtime for hours worked in excess of forty hours per week. *See* 29 U.S.C. §§ 206, 207. Specifically, it provides in relevant part:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the

regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA does not, however, define what is considered "work" time. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005).

The Supreme Court initially defined work broadly and included all time that an employee is on his employer's premises, on duty, or at a designated workplace, which included, among other things, "the time necessarily spent by employees walking from time clocks near the factory entrance gate to their workstations." *Alvarez,* 546 U.S. at 26 (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 690-92 (1946)). The concept of the "continuous workday," meaning that the workday includes "the period between the commencement and completion of the same workday of an employee's principal activity or activities," was also established. 29 C.F.R. § 790.6(b); *Alvarez,* 546 U.S. at 29 (noting that the continuous workday rule and regulations to that effect have been in place since 1947).

In response to the broad judicial interpretations of the FLSA, Congress enacted the Portal-to-Portal Act, 61 Stat. 84, which narrowed the reach of the FLSA by excluding two activities that had been deemed compensable under Supreme Court precedent:

> (1)    walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform and

> (2)    activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a)(1), (2). Other than these two exceptions, the Portal-to-Portal Act did not alter prior Supreme Court holdings on what constitutes "work," a "workweek," or a "workday." *Alvarez,* 546 U.S. at 28.

11

While activities that are preliminary or postliminary to an employee's principal activities are therefore by statute generally non-compensable, such activities are compensable if they are determined to be "an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see also* 29 C.F.R. § 790.8(b), (c) (defining "principal activity" to include activities that are an integral part of a principal activity and indispensable to its performance).

More recently, in 2005, the Supreme Court further refined the scope of the activities deemed compensable under the FLSA and the Portal-to-Portal Act. *Alvarez,* 546 U.S. at 30. In *Alvarez,* the court reviewed consolidated cases involving employees of meat and poultry processing plants who brought FLSA claims against their employers. The employees were required to wear certain items of protective gear that they donned and doffed on company property prior to walking to the production floor. *Id.* The Court considered whether the employers were required to compensate the employees for time spent donning and doffing protective gear, walking between the locker rooms and production areas, or waiting to don or doff at the start and end of their workday. *Id.* at 31.

The *Alvarez* court confirmed that if a preliminary activity is integral and indispensable to an employee's principal activity, then the activity itself is a principal activity. *Id.* at 37. It further held that those preliminary activities deemed to be integral and indispensable to the principal activity trigger the start of the workday under the continuous workday rule.[4] *Id.* at 33; *see also Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 802 (M.D. Tenn. 2008) ("Once an employee engages in a principal

---

[4] In the instant case, plaintiffs contend that their compensable workday begins when "they perform the first principal activity of retrieving Smithfield-required protective clothing or equipment either from their assigned locker or from the second-floor supply window." (Pls.' SJ Mem. 3). Specifically, they argue that obtaining a smock constitutes the first principal activity for most employees. (*Id.*). Defendant disagrees that donning a smock (or any other non-unique gear) can be considered an integral and indispensable activity.

12

activity—or in an activity that is integral and indispensable to a principal activity—the workday has begun and, under the continuous workday rule, that activity and any subsequent activities in which the employee engages prior to the end of the workday are compensable, even if those activities would otherwise be excluded from coverage by the Portal-to-Portal Act."). It noted that "the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity.'" *Alvarez*, 546 U.S. at 40-41. Thus, by concluding that the locker rooms where the donning and doffing of safety gear occurred were the relevant place of performance of the first principal activity, the Court decided that pre-donning walking to the locker rooms was excluded from FLSA coverage, but that post-donning walking from the locker rooms to another area within the plant was compensable under the continuous workday rule. 546 U.S. at 34, 37; *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 517 (D. Md. 2009) ("Thus, under the 'continuous work day' rule, any activity—donning and doffing, walking, waiting, sanitizing—undertaken by the employee after the work day has begun is compensable."). It similarly held that time spent waiting to don the first piece of gear that marks the start of the continuous workday is excluded from coverage under the FLSA. 546 U.S. at 42.

Therefore, not all work-related tasks are considered work under the FLSA, and the court must determine if the activity is a principal one or integral and indispensable to a principal activity. *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 358 (E.D.N.Y. 2009). "'Whether an activity is preliminary or postliminary to [the] principal activities . . . is a mixed question of law and fact because the precise nature of the employee's duties is a question of fact, while application of the FLSA to those duties is a question of law.'" *Jackson v. BECCM Co., Inc.*, No. 3:09cv00054, 2010

13

WL 56077, at *4 (W.D. Va. 5 Jan. 2010) (quoting *Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1216 (10th Cir. 1998)). The Fourth Circuit recently noted that "[i]t is an open question in this circuit whether donning and doffing protective gear is a preliminary or postliminary activity or 'integral and indispensable' to the principal activity of poultry processing." *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 214 (4th Cir. 2009).

The assessment of principal activities and the integral and indispensable parts of such principal activities involves consideration of "'whether [the activities] are performed as part of the regular work of the employees in the ordinary course of business.'" *Jackson*, 2010 WL 56077, at * 4 (quoting *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)); 29 C.F.R. § 790.8(a) (defining a "principal activity" as those activities that the employee is employed to perform). Where not deemed to be "'integral and indispensable activities, preliminary or postliminary activities are activities spent predominantly in the employees' own interests.'" *Id.* (quoting *Truslow v. Spotsylvania Cnty. Sherriff*, 783 F. Supp. 274, 278 (E.D. Va. 1992)).

While there does not appear to be a uniformly applied test[5] to determine whether an activity is integral and indispensable and thus compensable, courts may consider the following factors: whether the activity is required by the employer; whether it is necessary to the performance of the employee's duties; and whether the activity primarily benefits the employer or the employee. *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007); *In re Tyson Foods*, 694 F.

---

[5] Some courts first make a finding as to whether the donning and doffing can be considered "work," with work being defined as activity that requires physical or mental exertion and controlled or required by the employer and pursued for the benefit of the employer. *DeAsencio v. Tyson Foods, Inc.*, 500 F.3d 361, 370-71 (3d Cir. 2007) ("Activity must be 'work' to qualify for coverage under the FLSA, and that 'work,' if preliminary or postliminary, will still be compensable under the Portal-to-Portal Act if it is 'integral and indispensable' to the principal activity."). Next, they go on to consider if the activities are integral and indispensable, *i.e.*, "necessary to the principal work performed and done for the benefit of the employer." *Bamonte v. City of Mesa*, 598 F.3d 1217, 1225 (9th Cir. 2010) (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902-03 (9th Cir. 2003)).

14

Supp. 2d 1358, 1363 (M.D. Ga. 2010) (citing *Bonilla*, 487 F.3d at 1344); *Perez v. Mountaire Farms, Inc.*, 601 F. Supp. 2d 670, 675-76 (D. Md. 2009) (same).

## II.   NON-UNIQUE ITEMS

As noted, the motions of both sides seek partial summary judgment on the issue of whether donning and doffing non-unique equipment, the related activities of obtaining and discarding it, and pre- and post-shift and pre- and post-break walking and waiting, related or not to donning and doffing non-unique items, are compensable. Defendant seeks this relief by express reference to non-unique equipment, which it identifies for purposes of this case as the bump cap, smock, ear plugs or ear muffs, head net, disposable gloves, and plastic sleeves. Plaintiffs eschew the distinction between non-unique and unique equipment in their theory of the case, instead seeking summary judgment as to activities relating to personal protective equipment collectively, which obviously encompasses non-unique equipment. The court will first address the donning and doffing of non-unique items and then turn to the other activities at issue.

### A.   Donning and Doffing Non-Unique Items

The determination whether donning and doffing of non-unique items is compensable hinges on whether such activities are integral and indispensable to the employees' principal activities. This issue was not resolved by the Supreme Court in *Alvarez*.[6]

Defendant asserts that the donning and doffing of non-unique items is not integral and indispensable to an employee's principal activities and is therefore non-compensable as a matter of law. Defendant does not dispute that it requires employees to don the non-unique gear at issue

---

[6] This issue was not before the *Alvarez* Court because the circuit court held that the time spent donning and doffing such items was de minimis as a matter of law, and plaintiffs did not appeal that aspect of the decision. *Alvarez*, 546 U.S. at 32.

before beginning work on the production floor, but contends that that fact alone does not make the gear integral and indispensable. Several circuit courts have reached this conclusion. *See, e.g., Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448, 454 (5th Cir. 2009) ("[D]onning and doffing of generic protection gear such as safety glasses and hearing protection, are in any event 'non-compensable, preliminary tasks' under the Portal-to-Portal Act."); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126-27 (10th Cir. 1994).

Specifically, in *Gorman*, plaintiffs in a nuclear power station facility sought compensation for time spent donning and doffing helmets, safety glasses, and steel-toed boots. The court held that the items were necessary and thus indispensable to their work, but not integral to or intertwined with the actual work they were hired to perform. *Gorman*, 488 F.3d at 594. The Second Circuit reasoned that the "donning and doffing of generic protective gear is not rendered integral by being required by the employer or by government regulation" and noted that the tasks in question were relatively effortless, preliminary tasks. *Id.*

Similarly, in *Reich*, the Tenth Circuit held that meat-processing workers who donned and doffed standard or non-unique items of protective equipment, including a hard hat, boots, safety glasses, or ear plugs, were not entitled to be compensated for that time under the FLSA. 38 F.3d at 1126-27. The *Reich* court concluded that such tasks did not constitute "work" under the FLSA since it took the employees all of a few seconds to do and required little to no concentration. *Id.* While *Reich* preceded *Alvarez*, many courts have continued to follow it and its reasoning in similarly concluding that even where required, donning and doffing non-unique standard items is not integral and indispensable to an employee's principal job duties. *Haight v. The Wackenhut Corp.*, 692 F.

16

Supp. 2d 339, 345 (S.D.N.Y. 2010) (donning and doffing hard hats, safety glasses, steel-toed boots, gun holster, and inclement weather gear by security officers at nuclear power plant were not integral to principal activities); *Alford v. Perdue Farms, Inc.*, No. 5:07-cv-87, 2008 WL 879413, at *6 (M.D. Ga. 28 Mar. 2008) (awarding summary judgment to employer in finding that poultry processing employees' donning and doffing of hairnets, beard nets, goggles, ear plugs, boots, and bump caps was preliminary and postliminary).

Plaintiffs counter that the court should reject *Reich* and similar decisions, and maintain that *Alvarez* has undermined any continuing persuasive value that *Reich* may possess.[7] Because the *Alvarez* court reaffirmed that "'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA," 546 U.S. at 25 (citing *Armour v. Wantock*, 323 U.S. 126 (1944)), plaintiffs contend that any finding on the ease with which these items may be donned or doffed, a factor considered in *Reich*, does not diminish their character as integral and indispensable. They also rely on a 31 May 2006 Department of Labor Wage and Hour Advisory Memorandum which stated that "whether required gear is 'unique' or 'non-unique' is irrelevant to whether donning and doffing is a principal activity." Wage and Hour Advisory Memorandum No. 2006-2.

Other courts have found arguments similar to those made by plaintiffs to be persuasive. *See, e.g., In re Cargill Meat Solutions*, 632 F. Supp. 2d 368, 378 (M.D. Pa. 2008) ("[I]t is concluded that the time Plaintiffs spent donning, doffing, gathering, maintaining, and sanitizing work-related gear

---

[7] Indeed, several courts have questioned whether the *Reich* case is still good law following the Supreme Court's decision in *Alvarez. See, e.g., Perez*, 601 F. Supp. 2d at 678 ("*Reich* was decided before the Supreme Court affirmed *Alvarez*, so its persuasiveness is not compelling."); *Jordan*, 542 F. Supp. 2d at 803-04 ("The persuasive effect of the *Reich* decision is extremely limited, however, as it was issued before the Supreme Court's decision in *Alvarez*, which clarified that exertion is not required for an activity to be compensable under FLSA."); *Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240, 1246 (D. Kan. 2007) (stating it was "convinced that the [Tenth] Circuit, if given the opportunity to revisit the at issues in *Reich* would approach its analysis of the pertinent issues differently in light of *Alvarez*, regardless of whether the Circuit ultimately reached the same conclusions regarding compensability").

and equipment and the time spent traveling between the changing area and the production line, before and after shifts and during break times, is compensable under the FLSA and the Portal-to-Portal Act."); *DeAscencio*, 500 F.3d at 372 (finding that donning and doffing of safety glasses, earplugs, boots, smocks, and hairnets constitutes "work" as a matter of law and jury instruction stating that exertion was required was in error); *Garcia*, 474 F. Supp. 2d at 1247 (denying summary judgment and holding that time spent donning and doffing standard protective clothing at beef processing plant was not excluded from compensability under the FLSA).

After careful consideration of the relevant authorities and the present record in this case, the court finds that there are disputed issues of fact relating to the factors the court needs to consider in determining whether the donning and doffing of non-unique items is integral and indispensable to plaintiffs' primary activities. One relevant factor is whether an item can be donned at home or at various times. *See Bamonte*, 598 F.3d at 1225-26 (noting that the fact that the protective gear could be donned at home typically rendered the activity not compensable); *Musticchi v. City of Little Rock*, No. 4:08CV419, 2010 WL 3327998, at *3-4 (E.D. Ark. 24 Aug. 2010) (holding donning and doffing to be non-compensable since neither law nor employer required it to be done on premises); *Perez*, 610 F. Supp. 2d at 519 (finding that donning and doffing of protective gear was compensable notwithstanding employees' option to take it home where they were "required by law, policy, and the nature of the work to don and doff their [gear] at work"); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 903 (9th Cir. 2004) (holding that employees were required to change into uniforms on premises and forbidden to wear them home weighed heavily in favor of finding the donning and doffing time compensable). The record here leaves open the question whether the gear can be worn to and from work, or must be donned and doffed offsite. Plaintiffs' brief expressly states, "since the

18

smock must be donned on the premises of the employer prior to the start of the shift, it is integral and indispensable to the Plaintiffs' principal activities." (Pls.' SJ Mem. 16). Plaintiffs further contend that employees cannot bring a smock to don at home and cannot reuse a smock. (Pls.' SJ Mem. 7, citing Nemec Dep. 38, Gough Dep. 88). In contrast, defendant notes that some of the non-unique items, such as the bump caps, ear plugs or muffs, cotton gloves, and head nets, are often taken home each day. (Def.'s Opp. SJ Mem. 5, citing Nemec Dep. 16, 28-39, Lewis Dep. 32, 35, Slater Dep. 20-21, Thomas Dep. 25, Jennis David Dep. 24-25). Defendant further notes that while some employees obtain smocks immediately prior to their shift, others may obtain them at other times, including the day before. (Def.'s St. of Facts re Non-Unique Items ¶ 20; Def.'s Opp. SJ Mem. 4, citing Jacobs Dep. 30, Ronnie Simmons Dep. 40, Council Dep. 46, Stephens Dep. 39, Shipman Dep. 39, David Charles Simmons Dep. 59, Vereen Dep. 25, Wims Dep. 26).

Another relevant factor is whether defendant or the employees are the primary beneficiaries of donning and doffing the non-unique items. *See Johnson v. Koch Foods*, 670 F. Supp. 2d 657, 669-70 (2009) ("The proof in the record demonstrates that both plaintiffs and Koch Foods are deriving benefits from these activities [of donning and doffing sanitary gear]. As such, there is a material issue of fact as to which party receives the primary benefit from the washing and the donning and doffing of the required and optional protective items. Therefore, summary judgment is inappropriate on whether these are integral and indispensable activities."). Here, both sides contend that the other reaps the primary benefit of these non-unique items. It is certainly plausible that plaintiffs could demonstrate that maintaining a sanitary environment during pork processing is intertwined with the work they were hired to perform and therefore that donning and doffing the non-unique items is integral and indispensable, in contrast to cases where the items are donned and

19

donned solely for employee comfort or protection. The evidence of record cited by the parties does not establish as a matter of law which side is correct. (*See, e.g.* Pls.' SJ Mem. 7-9, citing Nemec Dep. 38, 64, Gough Dep. 87, 88; Def.'s Opp. SJ Mem. 6-7, citing numerous depositions, 30).

Finally, it is unclear from the present record whether all of the items identified by defendant as non-unique are entitled to the same treatment. It is conceivable that some of the non-unique items may be deemed integral and indispensable while others may not. It is also unclear from the record if the items must be donned in one particular order or whether some items, like the disposable smock, could always be donned last among these non-unique items.

In light of the disputed facts, the court cannot determine as a matter of law whether the donning and doffing of the non-unique equipment is integral and indispensable to plaintiffs' principal activities. Other courts have reached the same conclusion under very similar facts. *See In re Tyson Foods, Inc.*, 694 F. Supp. 2d at 1365-66 ("[T]he Court concludes that genuine issues of material fact exist as to whether the donning, doffing, and sanitizing activities are 'integral and indispensable' to Plaintiffs' primary activities."); *Helmert v. Butterball, Inc.*, No. 4:08CV342, 2009 WL 5066759, at *12 (E.D. Ark. 15 Dec. 2009) ("The Court will not hold as a matter of law that donning and doffing is not integral and indispensable to the principal activities of processing turkeys simply because the items donned are not unique."); *Perez*, 601 F. Supp. 2d at 679-81 (holding that issues of fact precluded summary judgment on issue of whether poultry employees' donning and doffing of sanitary gear was integral and indispensable); *Gortat*, 257 F.R.D. at 360 (finding issues of fact on when and where the workday started so as to preclude summary judgment on construction workers' FLSA claims); *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1316-17 (N.D. Ala. 2008) (finding genuine issue of material fact existed as to whether employer received primary benefit from

donning, doffing, and sanitizing activities by chicken processing employees). Accordingly, this aspect of both sides' motions for partial summary judgment should be denied.

## B. Other Related Activities

The court turns now to the compensability under the FLSA of the pre-donning obtaining and post-doffing discarding of the non-unique items of equipment and pre- and post-shift and pre- and post-break walking and waiting. As indicated, both sides seek summary judgment with respect to these activities.

Plaintiffs appear to concede, however, that if the court ultimately concludes that the donning and doffing of the non-unique items is non-compensable, then these related activities would also be non-compensable. (*See* Pls.' Opp. Mem. re Non-Unique Items (D.E. 379) 22). The court agrees. The related activities would be preliminary and postliminary and not integral and indispensable to plaintiffs' principal activities.

Not stopping its analysis there, defendant argues that even if the donning and doffing of these items is deemed compensable, time for the pre-donning obtaining and post-doffing discarding of them would be non-compensable as preliminary and postliminary activities, respectively, that are not integral and indispensable to plaintiffs' principal activities. The court agrees in part.

*Alvarez* provides useful guidance. In it, as discussed, the Supreme Court concluded that the employees' place of performance of the principal activity was in the locker room where the safety gear was donned and doffed. 546 U.S. at 34. The Court excepted from compensable time the time it took the plaintiffs to walk to the locker rooms, pursuant to 29 U.S.C. § 254(a)(1). *Id.* It excluded the time spent waiting to don the first piece of gear as an activity that was preliminary in nature, pursuant to 29 U.S.C. § 254(a)(2). *Id.* at 42. Similarly, here, the act of obtaining the non-unique

21

gear pre-donning and discarding it post-doffing are, respectively, preliminary and postliminary in nature.

Notably, the mere act of carrying an item (even where donning that item is compensable) does not make the time compensable. Instructive on this point are the FLSA regulations providing that time carrying or transporting equipment and tools becomes compensable when it is so burdensome that it is not segregable from the performance of assigned work. *See* 29 C.F.R. § 790.7(d). The regulations give as an example of compensable activity a logger's carrying a heavy saw to the woods and contrasts it with the non-compensable activity of his carrying ordinary hand tools. *Id.* ("An illustration of such travel would be the carrying by a logger of a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to the cutting area. In such a situation, the walking, riding, or traveling is not segregable from the simultaneous performance of his assigned work (the carrying of the equipment, etc.) and it does not constitute travel 'to and from the actual place of performance' of the principal activities he is employed to perform."). Here, defendant has presented evidence that the items weigh a total of about a pound and therefore that carrying them is not burdensome. (*See* Def.'s St. of Facts re Non-Unique Items ¶ 16, citing Yvonnie Rutherford Decl. (D.E. 359-18) ¶¶ 3, 4; Pls.' Opp. Mem. re Non-Unique Items 5). This fact substantiates that the non-unique gear is more akin to the ordinary hand tools in the example in the regulations and that obtaining and discarding the non-unique gear is segregable from the performance of plaintiffs' work.

Even though the pre-donning obtaining and post-doffing discarding of the non-unique items is, respectively, preliminary and postliminary in nature, they still could be compensable if determined to be part of the continuous workday. The record establishes that the pre-donning obtaining of the

22

non-unique items is not part of the continuous workday. The record shows no principal activities of plaintiffs preceding the obtaining of the items. In particular, because the unique gear is donned only at the production line, it is not donned first and therefore does not make the obtaining of the non-unique gear compensable as part of the continuous workday.

The same conclusion cannot be reached with respect to the post-doffing discarding of the non-unique gear. Based on the present record, it is possible that principal activities may follow the discarding of the non-unique items and therefore that such discarding would be part of the continuous workday. Specifically, the record shows that the doffing of some unique items of equipment, which activity may qualify as a principal activity, could occur after the discarding of the non-unique items.

Accordingly, the court concludes that the pre-donning obtaining of the non-unique gear, but not the post-doffing discarding of it, is not compensable under the FLSA as a matter of law. *Jordan*, 542 F. Supp. 2d at 810 (holding that while donning and doffing protective frock was compensable under the continuous workday rule, "other preliminary and postliminary activities that precede or follow the donning and doffing—such as retrieving, exchanging, and stowing—are not compensable, as they are not integral and indispensable to the plaintiffs' principal activities"). This aspect of defendant's motion should accordingly be allowed, and the claims for the pre-donning obtaining of the non-unique gear should be dismissed.

The remaining question is whether the time for pre- and post-shift and pre- and post-break walking and waiting is compensable. Defendant argues that the walking time is non-compensable because the plaintiffs' place of performance is their respective job station on the production floor and the walking time falls squarely within the Portal-to-Portal Act exclusion for "walking, riding, or

23

traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S. C. § 254(a)(1). The waiting time is purportedly excluded as a preliminary and postliminary activity that is not integral and indispensable to plaintiffs' primary activity. Comparable arguments are made with respect to break-related walking and waiting. Because the court has determined that there are issues of fact as to whether donning and doffing particular items of non-unique protective gear is or is not compensable, as well as issues of fact as to when and where those items are donned and doffed, some pre- and post-shift and pre- and post-break walking and waiting time sought to be excluded on this motion may be compensable. Accordingly, summary judgment on this point should be denied.

## III.   KNIFE WORKERS' CLAIMS

As indicated, defendant also seeks summary judgment dismissing various claims of plaintiffs who use knives. More specifically, defendant seeks dismissal of knife worker plaintiffs' claims for: (1) time spent obtaining, carrying, and depositing unique items of protective gear (*i.e.*, cut-resistant gloves, mesh gloves, belly guard, plexiglas arm guard, scabbard, and steel) and walking pre-donning and post-doffing and post-washing such gear; (2) time spent waiting pre-donning, post-doffing, and for washing; and (3) imposition of any requirement that defendant measure individual time spent in compensable pre- and post-production activities. For purposes of its motion only, defendant concedes that the donning, doffing, and washing of the unique protective items in question are principal activities compensable under the FLSA. (Def.'s Knife SJ Mem. (D.E. 357) 2). It is also notable that plaintiffs are required to wear the unique protective gear only while on the production floor and that knife worker employees generally don and doff such items right at their work stations. (*Id.* 10; Pls.' Opp. Knife Mem. (D.E. 381) 6).

24

**A.    Obtaining, Carrying, and Depositing Unique Items, and Pre-Donning and Post-Doffing and Post-Washing Walking Time**

Defendant seeks dismissal of the knife workers' claims for time spent obtaining unique equipment, carrying it, and walking before donning it, arguing that such time is not compensable because such activity is preliminary, and not integral and indispensable to the knife workers' principal activities. Defendant makes comparable arguments regarding time spent carrying unique equipment, walking, and depositing it after it is doffed and/or washed, contending that this time is postliminary. Defendant's contentions apply to these activities whether they are pre- or post-shift or pre- or post-break.

Defendant relies, most persuasively, on *Alvarez* for its contentions. As discussed, the Supreme Court there deemed the place of performance of the first principal activity to be in the locker rooms and therefore excluded from compensation the time that employees spent walking to the locker rooms before donning the items in question. 546 U.S. at 34. The court also excluded the time spent waiting to don the first piece of gear as preliminary. *Id.* at 42.

Drawing on these principles and for the same reasons discussed with respect to the comparable activities involving non-unique items, the court agrees with defendant that time spent by plaintiffs obtaining and carrying unique gear and walking before donning it, and time spent carrying it, walking, and discarding it post-doffing and/or post-washing (even as to gear that when donned or doffed is compensable) is preliminary and postliminary, respectively, in nature. *Jordan*, 542 F. Supp. 2d at 810. As with the non-unique gear, the unique gear at issue weighs relatively little, less than 70 ounces, which substantiates that it is not so burdensome as to be non-segregable from the employees' primary activities. (Def.'s St. of Facts re Knife Workers ¶ 63, citing Yvonnie Rutherford Dep. (D.E. 357-14) ¶ 3; Pls.' Opp. Knife Mem. 6).

25

However, in this instance, the fact that this activity is preliminary and postliminary in nature does not necessarily render time spent on it non-compensable. Resolution of that issue ultimately depends on the court's finding as to whether the donning and doffing of non-unique gear is compensable. If donning the non-unique gear is deemed integral and indispensable and thereby compensable, and if knife workers obtain their unique protective equipment *after* they don the non-unique items, then the time spent obtaining the unique protective equipment, carrying it, and walking before donning it would be compensable under the continuous workday rule. An analogous rationale would apply to the comparable post-doffing and post-washing activities. Accordingly, because there are genuine issues of material fact on the question of whether donning and doffing the non-unique gear is integral and indispensable, the court cannot rule as a matter of law on whether obtaining, carrying, or discarding the unique protective gear worn by knife workers and the associated walking is compensable. The portion of defendant's motion seeking dismissal of the knife workers' claims for time spent on such activities should accordingly be denied.

**B.     Pre-Donning and Post-Doffing and Washing Wait Time**

Next defendant argues that *Alvarez* stands for the proposition that time spent waiting pre-donning, post-doffing, and for washing, whether pre- or post-shift, or pre- or post-break, is not compensable. While the court agrees that this time is preliminary or postliminary in nature, because the issue of whether the donning and doffing of certain items is integral and indispensable cannot be resolved as a matter of law, the court is similarly unable to conclude at present that all pre-donning, post-doffing, and washing wait time is not compensable as a matter of law. As with the obtaining, carrying, discarding, and related walking just discussed, it is possible that if the donning and doffing of non-unique gear is ultimately deemed compensable, then the wait time involved

26

before donning and after doffing the knife workers' unique protective gear, as well as wait time associated with washing the gear, would be compensable under the continuous workday rule. Accordingly, this aspect of defendant's motion should be denied as well.

### C.    Requirement to Measure Individual Time

Finally, defendant argues that the court should enter summary judgment dismissing any claim by plaintiffs that the FLSA requires defendant to measure each individual employee's time spent on compensable pre- and post-production activities (not limited to those relating to unique items) and that defendant is not permitted to set compensation for these activities based on a uniform reasonable amount of time. Defendant cites substantial authority for its position, and it appears to conform with applicable law. *See, e.g., Anderson v. Cagle's Inc.*, 488 F.3d 945, 949-50 (11th Cir. 2007); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 900 (9th Cir. 2003); *Perez*, 601 F. Supp. 2d at 672; *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1003-04 (W.D. Tenn. 2008); *Burks v. Equity Group-Eufaula Div.*, 571 F. Supp. 2d 1235, 1245 (M.D. Ala. 2008); *Gatewood v. Koch Foods of Miss., LLC*, 569 F. Supp. 2d 687, 690 (S.D. Miss. 2008); *Anderson*, 147 F. Supp. 2d at 560-61. Plaintiffs did not respond to this aspect of defendant's motion. It should accordingly be allowed and, to the extent that plaintiffs are alleging a claim that each individual's time for the activities in question must be measured, the claim should be dismissed.

## IV.    DE MINIMIS DEFENSE

Plaintiffs seek denial of defendant's de minimis defense as a matter of law. A recognized exception from compensable time is for work that is deemed de minimis. *Anderson*, 328 U.S. at 692 (1946). In *Anderson*, the Supreme Court stated that "[s]plit second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee

27

is required to give up a substantial measure of his time and effort that compensable time is involved." *Anderson*, 328 U.S. at 692.

The following factors are relevant to a finding that a claim is de minimis: the practical administrative difficulty of recording the time, the size of the aggregate claim, and the regularity of the additional work. *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

The Supreme Court has made clear that the exact amount of time that may be deemed de minimis is ultimately a question for the trier of fact. *Anderson*, 328 U.S. at 692. While there may be instances where it can be determined as a matter of law, *see, e.g., Albrecht v. Wackenhut Corp.*, No. 09-4449-cv, 2010 WL 2134312, at *2 (2d Cir. 28 May 2010) (affirming district courts' finding 30-90 seconds spent by employees in obtaining and returning their firearms and radios was de minimis as a matter of law); *Haight*, 692 F. Supp. 2d at 345 (finding that 7 minutes spent donning and doffing generic protective gear is de minimis as a matter of law), where the determination of the time involved is disputed, resolution on summary judgment is not appropriate. *Johnson*, 670 F. Supp. 2d at 672.

Defendant has produced evidence demonstrating the varying practices among departments, job duties, and equipment required such that it raises issues of fact over whether all claims can even be quantified by the court as a matter of law in the first instance. Plaintiffs have failed to show that no jury could reasonably conclude that the amount of time at issue is de minimis as a matter of law. *Perez*, 601 F. Supp. 2d at 684 (finding that issues of fact precluded summary judgment on issue of whether time spent by plaintiff on compensable activities was de minimis).

Plaintiffs stress, though, that their argument relates not merely to the amount of time involved, but to defendant's ability administratively to quantify and pay for all donning and doffing

28

and related activities. But even here issues of fact prevail. Although plaintiffs contend that defendant could move time clocks closer to supply windows, defendant counters that employees obtain their items in various locations, don and doff them at different times, and have varying start times for their shifts. Given the presence of genuine issues of material fact, summary judgment on this point is not appropriate and should be denied.

## V.    GOOD FAITH DEFENSE

As indicated, plaintiffs seek summary judgment denying the good faith defense to plaintiffs' claims asserted by defendant as its Third Defense. That defense reads: "Plaintiffs' claims under the FLSA are barred to the extent that Defendant's actions have been taken in good faith in conformity with and reliance upon established rulings, administrative regulations and interpretations of the FLSA within the meaning of 29 U.S.C. § 259." (Def.'s Ans. to Third Am. Compl. 5 ¶ 3). Defendant asserted as the Fifth Defense[8] in its answer another good faith defense, under 29 U.S.C. § 260,[9] but

---

[8] The Fifth Defense reads:

>    5.  With regard to the time period preceding the Supreme Court's opinion in *IBP, Inc. v. Alvarez*, Defendant pleads that Defendant's actions have been in good faith and based upon reasonable grounds for believing that such actions were not in violation of the FLSA specifically based upon Department of Labor regulations, opinions and interpretations of the FLSA by the Department of Labor and other government agencies, prior results and decisions in other actions relating to the compensability of activities performed or alleged performed by employees in the poultry industry, and articles and publications regarding the requirements of the FLSA.

(Def.'s Ans. to Third Am. Compl. 5-6 ¶ 5).

[9] Section 260 reads:

> In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

plaintiffs did not challenge it in their summary judgment motion. (Def.'s Ans. to Third Am. Compl. 5-6 ¶ 5).

Under 29 U.S.C. § 259(a), employers may assert a good faith defense if they plead and prove good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the agency of the United States specified in subsection (b) of that section. *In re Tyson Foods, Inc.*, 694 F. Supp. 2d at 1371 (citing *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir. 1987)).

Defendant offered no response to plaintiffs' challenge to its 29 U.S.C. § 259 defense other than to note that plaintiffs were not also challenging its 29 U.S.C. § 260 defense. (Def.'s Opp. SJ Mem. 1 n.1). Defendant has therefore not met its burden of responding to this portion of plaintiffs' motion. Plaintiffs' motion should accordingly be allowed with respect to defendant's good faith defense under 29 U.S.C. § 259, asserted as its Third Defense, and that defense should be denied as a matter of law. Defendant's defense under 29 U.S.C. § 260, asserted as its Fifth Defense, should remain in the case.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the motions for partial summary judgment be ALLOWED in part and DENIED in part as follows:

1.      Plaintiffs' motion for partial summary judgment (D.E. 349) be ALLOWED as to defendant's defense of good faith under 29 U.S.C. § 259, asserted as its Third Defense, and that such defense be DENIED with prejudice, and that in all other respects the motion be DENIED;

2.      Defendant's motion for partial summary judgment concerning non-unique items (D.E. 358) be ALLOWED as to plaintiffs' claim for time spent obtaining non-unique equipment and such

30

claim be DISMISSED with prejudice, and that in all other respects the motion be DENIED; and

3.     Defendant's motion for partial summary judgment concerning knife workers (D.E. 356) be ALLOWED as to plaintiffs' claim that defendant be required to measure each individual employee's time spent on compensable pre- and post-production activities and such claim be DISMISSED with prejudice, and that in all other respects the motion be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until **10 September 2010**, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this $3 \int$ day of August, 2010.

James E. Gates
United States Magistrate Judge